CARPENTER, *Ex'r*, *v.* HATCH *& a.*

On the question of testamentary capacity, evidence of the relations existing between the testator and a legatee named in his will is admissible.

Declarations of legatees, against their interest, are not admissible in a proceeding to set aside the will, to which proceeding they are not parties.

Opinions of non-experts may be received as to the mental soundness or unsoundness of the testator.

Evidence that the testator, eight months before making the will, knew the amount and character of his property, is admissible on the question of his testamentary capacity when the will was executed.

APPEAL, by the defendants from a decree of the judge of probate allowing the will and codicil of Silas Kendall. The issues as to each instrument were,—(1) that the testator was not of sound mind; (2) that he was induced to execute the instruments by undue influence of the plaintiff, Mason A. Carpenter, and of other legatees; (3) that the will and codicil were executed by the testator without reading or knowing their contents.

The will was executed July 14, 1886, and the codicil September 4, 1886. The testator was never married. He died September 9, 1886, at the age of eighty. The two defendants, his nephews, are his only heirs at law. By his will the testator gave to the defendants the promissory notes which he held against them,—those of John T. amounting, with interest, to about $1,700, and those of Joseph K. to about $1,500. The remainder of his estate, amounting to about $3,500, he gave as follows: To the First Baptist Society in Nashua, $700; to the Baptist church in Tyngsborough,

Mass., $500; to Orlando J. Davis, $300; to George E. Davis, $400; to Charles W. Carpenter, $200; to Leon S. Carpenter, $100; to Diantha Carpenter, $700; to Susan J. Poole, $200; and by the codicil made his executor, the plaintiff, residuary legatee.

Kendall in early life labored for Mial Davis, and lived in his family at Tyngsborough, and afterwards at Nashua, and attended the Baptist churches at those places. George E. is the son, and Orlando J. the grandson, of Mial Davis. From the spring of 1885 until his death Kendall lived in the family of Emma L. Carpenter, the widow of Charles L. Carpenter. He was, during this time, by reason of his infirmities, unable to leave the house. July 14, 1886, both legs and the right arm were paralyzed. September 4, 1886, the other arm became paralyzed, and he died of chronic paralysis. Mrs. Carpenter's family consisted of Charles W. and Leon S. Carpenter, her minor sons, Warren and Diantha Carpenter, the parents of her deceased husband, and Susan J. Poole, her mother. Warren Carpenter and Kendall were cousins. Mason A. Carpenter is the husband of Emma L. Carpenter's sister.

Subject to the defendants' exception, testimony was received that Mial Davis acted as deacon of the Baptist church at Tyngsborough, was one of the most active members of the church; and that Kendall, when he lived in Tyngsborough, attended that church, and sat with Davis and his family in their pew; and that he acted as guardian of Orlando J. Davis after his father's death. No letters of guardianship, or record of his appointment as guardian, were produced.

Declarations of Diantha and Charles W. Carpenter, against their interest, were offered by the defendants, and excluded.

Ednah Hatch testified that prior to July, 1885, she and her deceased husband examined Kendall's bank books, railroad stocks, notes, and mortgages; that she called off the amounts of the securities to her husband, who set them down on a paper, added them up, and told her what the total amount was; that she did not add up the figures, nor "follow him in her mind." She was then asked to state the footing announced by her husband. The paper is lost  The evidence was excluded, and the defendants excepted.

Emma L. Carpenter was permitted to testify, subject to the defendants' exception, that in her opinion Kendall was of sound mind in the summer of 1886.

A witness called by the defendants testified to the execution of a will by Kendall in November, 1885, and, on cross-examination, that "Kendall enumerated his bank-books and the notes he had, and stated how old they were, and how long since interest had been paid. It made an impression on my mind. He spoke of his relatives, and of the Davis family with which he had been connected. He seemed to have in mind as well as anybody his property, and what he wanted to do with it." The codicil was written by Mason A. Carpenter, who procured the attendance of the at-

testing witnesses, signed Kendall's name, and made a cross in the signature, having placed the pen in Kendall's hand. The codicil was read to Kendall, and was written and executed in the manner stated at his request.

The defendants requested the court to instruct the jury as follows: (1) There is no evidence that at the time of the execution of the will and codicil the testator was informed of the amount or character of his property. (2) The law presumes that Mason A. Carpenter controlled the mind of Kendall, and presumes the codicil invalid by reason of such control. (3) If Kendall had always been on affectionate terms with the Hatch boys, his nephews, and the members of the Carpenter family, through false statements, produced in his mind an insane delusion that the Hatch boys, in July, and before July 14, 1886, were treating him badly by moving for the appointment of a guardian, and there was no ground for such delusion,—these points are proper for the consideration of the jury on the questions of testamentary capacity and undue influence.

The foregoing instructions, numbered 1 and 2, were not given. The court instructed the jury, among other things, as follows: "If you find from all the evidence that Kendall, July 14, 1886, by reason of old age, loss of memory, bodily infirmity, or from any other cause, failed to comprehend intelligently the property he possessed, the disposition he wished to make of it by will, and the persons and objects he desired to participate in his bounty, it will be your duty to find that he did not possess sufficient testamentary capacity, and your verdict on this issue must be for the contestants. These remarks equally apply to the questions raised by the first issue in regard to the codicil.

"Was Kendall induced to execute the instrument offered as his last will and testament by undue influence, over-persuasion, or artful misrepresentations on the part of Emma L., Mason A., and Diantha Carpenter, or others interested in the making of the will? . . . Consider that the testator was prostrated by sickness; that he was in a condition, bodily and mentally, to be easily imposed upon; that he was at the house of Emma L. Carpenter; the extent to which the Carpenters are made beneficiaries under the will; the circumstances attending its execution; the fact that Mason A. Carpenter was named as executor, and a few days afterward was appointed attorney and took possession of Kendell's property and of the will,—these matters, with all other evidence, are proper to be considered on the question of undue influence. Consider, also, whether the Carpenters or any of them caused him falsely to believe that his nephews, the defendants, were treating him badly in the appointment of a guardian, and whether his feelings toward them had thereby become unfriendly. Direct proof of undue influence is not required. It may be inferred from circumstances. All these matters you will also consider in answering the question

whether undue influence was used in the execution of the codicil. You will also weigh the evidence as to the testator's physical and mental condition after July 14, together with the fact that the codicil was written by Mason A. Carpenter, the executor, and only person benefited by it; also, all the evidence and circumstances surrounding the parties at the time and before the execution of the codicil, as bearing on the question whether it was procured to be executed by the executor by undue influence, fraud, or deceit practised upon Kendall by the executor or by any other person."

The defendants excepted to the court's refusal to give the instructions requested.

*D. H. Woodward*, and *C. B. Eddy* (of Vermont), for the plaintiff.

*L. Wellington*, and *Davis & Enright* (of Vermont), for the defendants.

CARPENTER, J. The testimony that Kendall, when he lived in Tyngsborough, attended the church of which Mial Davis, the father of one legatee and grandfather of another, was a deacon, and sat in the pew with him and his family, and that he acted as guardian for the grandson, was competent for the purpose of showing the testator's relations to the Davis legatees, and affording a reason for his manifestation of interest in them. It was open to the defendants to argue to the jury that legacies to strangers indicated an unbalanced mind, and it was proper for the plaintiff to show that the legatees were not strangers. There is no foundation for the objection that the evidence touching Kendall's acting as guardian was secondary. No attempt was made to show that he was a legal guardian. The plaintiff was not precluded, by the fact that he was not in law a guardian, from showing that in fact he took charge of and cared for the boy and his property as a guardian would.

The declarations of Diantha and Charles W. Carpenter against their interest as legatees under the will were incompetent. They were not parties to the suit. *Atkins* v. *Sanger*, 1 Pick. 192; *Shailer* v. *Bumstead*, 99 Mass. 112, 128, 129. The question put to Ednah Hatch, asking what her deceased husband said was the amount of the testator's securities, was properly excluded as calling for mere hearsay. His decease did not make his declarations competent. The act of examining the securities and computing their amount was immaterial, and his statement was not admissible as a part of the *res gestæ*. *Morrill* v. *Foster*, 32 N. H. 358, 360; *Ordway* v. *Sanders*, 58 N. H. 132.

The opinion of Emma L. Carpenter, that the testator was of sound mind, was admissible. *Hardy* v. *Merrill*, 56 N. H. 227. Whether she was qualified to give an opinion was a question of fact for the trial court. *Jones* v. *Tucker*, 41 N. H. 546; *Bundy* v. *Hyde*, 50 N. H. 116.

The will itself was evidence to show that the testator, when he executed it, was informed of the amount and character of his property. The evidence that in November, 1885, he was fully cognizant of the amount and character of his property had some tendency, and, if he remained in possession of his faculties, a strong tendency, to show that he had the same knowledge a few months later when he executed the will and codicil.

There was no presumption of law or of fact that Mason A. Carpenter controlled the testator's mind, and that the codicil was invalid for that reason. *State* v. *Hodge*, 50 N. H. 510; *Bank* v. *Getchell*, 59 N. H. 281. Whether he did or did not control or improperly influence the testator was a question of fact for the determination of the jury upon all the evidence, including his relations to the testator, his acts and conduct in respect to the making of the will and codicil, and the benefit he derives from them. It was submitted to the jury with proper instructions. *Lord* v. *Lord*, 58 N. H. 7, 11.

The instructions asked for by the defendants in their third request were given. It was not necessary that the court should adopt the defendants' precise language. Other exceptions, not urged in the argument, have not been overlooked.

*Judgment on the verdict.*

SMITH, J., did not sit: the others concurred.