Hillsborough, ⟩
Nov. 7, 1905. ∫

HANSON v. MANCHESTER STREET RAILWAY.

Where the evidence in an action for personal injuries resulting from a col-
lision between a team and an electric car shows that the plaintiff was
knowingly and without necessity riding with a drunken and incompetent
driver, who at the time of the accident was guilty of negligence which
contributed thereto and ought reasonably to have been anticipated of one
in his condition, an instruction to the jury, to the effect that the plain-
tiff's negligence in riding with such a driver and the latter's conduct were
entirely immaterial and not to be considered upon the question of liability,
is erroneous and furnishes cause for setting aside a verdict in the plain-
tiff's favor.

CASE, for negligence. Trial by jury and verdict for the plain-
tiff. Transferred from the January term, 1904, of the superior
court by *Peaslee*, J.

On Labor Day, 1900, the plaintiff was injured in a collision
between a car of the defendant corporation and a team driven by
one Reagan, with whom the plaintiff had ridden from place to
place for some time prior to the accident. The plaintiff's evidence
tended to show that his injury resulted from the motorman's neg-
ligent failure to stop the car. The defendants' evidence tended
to show that Reagan was intoxicated and incapable of properly
driving a horse; that the plaintiff got into the wagon while
Reagan was in that condition and continued to ride with him after
he had an opportunity to quit his company; that at the time of
the accident Reagan was guilty of a negligent act which contrib-
uted to cause the accident and which might reasonably have been
expected of one in his condition; and that Reagan's drunken con-
dition was known to the plaintiff during all the time they rode
together.

The jury were instructed in part as follows, the defendants
excepting to the portions of the charge enclosed in brackets: " In
this case the road's representative was the motorman. So far as
this case is concerned, if he acted with reasonable care, the defend-
ants are free from fault; and if he was careless, the defendants
were negligent. Considering, then, all the surrounding circum-
stances,—the nature of the vehicle being operated, the means at
hand for stopping it, the amount and nature of the travel at this
place, all the general surroundings, and all the special circumstan-
ces you shall find to exist in this particular case,—considering all
these things, ought the motorman to have done something he
failed to do, and so have avoided the accident? Of course, the

general rule would be that the cars should go on their way without interruption; but this does not give the road the right to wantonly or carelessly run upon persons or teams upon the track. In a case like that, or in any emergency, they are required to refrain from an exercise of their ordinary rights to such an extent as due or ordinary care requires to avoid doing injury. That is, they are bound to act with an average degree of prudence in view of the special facts when the emergency arises. And the sole question as to the defendants' fault is whether the car should have been stopped after the motorman saw, or ought to have seen, the horse upon the track. . . . [The plaintiff was bound to use such a degree of care as a man of average prudence would have used situated just as the plaintiff was. It is his conduct at the time the accident happened, and while it was imminent, which is decisive. His previous negligence (if he was negligent in riding with Reagan) or his misconduct in getting drunk (if he was in that condition) are not matters which will excuse the defendants if at the time of the accident he was doing all that prudence required of a person in his situation. So you will inquire how the average man, riding along that street, in that wagon driven by Reagan, would have acted at and just before the time of the collision. Was there anything which a fair degree of prudence called upon him to then do to escape the danger? If there was not, his previous fault (if there was such fault) is of no consequence. In law, such prior negligence merely furnished an occasion for the defendants to negligently injure him, and their fault would be the legal cause of the accident.] It would be a negligent act for a man to drive a nervous horse with an insecure pair of reins; but if, while so doing and controlling the horse the best he could with the insufficient harness, he was carelessly run upon by a person who could by due care at the time avoid the collision, the carelessness of the man who could at the time avoid the trouble is the cause of the accident, and he is legally responsible for its results. It is for you to say whether there is anything in the facts in this case to which this rule applies. [The fact (if it is a fact) that Reagan was drunk and was grossly careless is no defence. The question still would be: Could the plaintiff at the time of the accident have avoided the effect of Reagan's fault by the use of ordinary care?] To sum up, then: The plaintiff must have proved that at the time of the accident the defendants could, and he could not, prevent the collision by the exercise of ordinary care; and if Reagan was violating the speed law, and by such act caused the collision, it must appear that the plaintiff was not a party to that crime."

*Burnham, Brown, Jones & Warren,* for the plaintiff.

*Streeter & Hollis* and *Taggart, Tuttle, Burroughs & Wyman,* for the defendants.

PARSONS, C. J.　The defendants' complaint is that the jury were not instructed as to the case made by their evidence. The evidence to which this complaint relates was, that the plaintiff was knowingly and without necessity riding with a drunken driver, and that at the time of the accident the driver Reagan was guilty of a negligent act which contributed to cause the injury and which might reasonably have been expected of one in the condition in which Hanson knew Reagan to be. If the jury were not directed to pass upon this evidence, it must be taken for the purposes of the case here that this evidence was true and would have established in the minds of the jury everything it tended to prove. That a jury might find that a man of ordinary prudence would not have continued to ride with a drunken, incompetent driver after he ascertained the fact, and that therefore such conduct was negligent, is not open to argument. They might also on the evidence have found, not only that Hanson ought to have anticipated what was reasonably to be expected of one in Reagan's condition, but that in fact he did anticipate it. What this act was, or in what way it was connected with the injury, the case does not disclose. Whether it was or not a contributing cause of the injury upon the facts proved, may be a question of law; but that question is not presented by the record, which states as a fact that the act did contribute to cause the injury. It is plain from the case that the distinction between negligence as the cause of the danger and negligence as the cause of the injury was present in the minds of counsel and court throughout the trial. The language of the case must have been used in its strict legal signification. In this sense, Reagan's negligent act could not have been an act that "contributed to cause the injury" unless it was a proximate cause thereof, *i. e.,* legally a part of the cause—one without which there might have been no injury.

For his own protection, Hanson was bound to exercise ordinary care in the selection of a driver, horse, harness, and carriage. *Plummer* v. *Ossipee,* 59 N. H. 55, 59; *Tucker* v. *Henniker,* 41 N. H. 317; *Clark* v. *Barrington,* 41 N. H. 44. For an injury to himself in part from the negligence of another and in part from the insufficiency of the driver, horse, or carriage due to his own want of care, he could not recover; not because the negligence of the driver or the defect in the horse, harness, or carriage is imputed to him, or because he is identified with either, but because under

such circumstances his own fault would be a proximate cause of the injury. The doctrine of imputed negligence and of the identification of an innocent passenger with his driver, set up in *Thorogood* v. *Bryan*, 8 C. B. 115, had the effect of preventing a recovery by a faultless plaintiff injured by the fault of another, in disregard of the fundamental law of negligence: that he whose wrongful act has injured one without fault must pay the damage so occasioned. The authority of the case is now almost universally denied in England and in this country. *Noyes* v. *Boscawen*, 64 N. H. 361, 370; *Mills* v. *Armstrong*, 13 App. Cas. 1. But the refusal to follow *Thorogood* v. *Bryan* in depriving an innocent plaintiff of his action has nowhere been construed to give an action to a plaintiff whose fault caused the injury. If the suit had been against the city or against the defendants, for an injury from a previous negligent obstruction of the street, the defendants' evidence would have constituted a defence. The plaintiff's negligence in riding with an unskillful driver whose incompetency contributed to cause the injury would have been its sole legal cause.

The law is not affected by the presence or the absence of the parties, or by the difficulty of applying it to a complicated state of facts. But the cases present different aspects according to the facts in proof; and a statement of the law correct as applied to one state of facts may be erroneous in another. He who cannot at the time prevent injury to himself by the fault of another present and acting is legally without fault, whether his inability to protect himself is due to his absence, prior negligence, or other cause. The fault of the one who can at the time, but who does not, prevent an injury is its sole legal cause, however the dangerous situation was created (*Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159, 163, 164; *Parkinson* v. *Railway*, 71 N. H. 28; *Little* v. *Railroad*, 72 N. H. 61; *S. C.*, 72 N. H. 502; *Yeaton* v. *Railroad*, *ante*, p. 285); or as is sometimes said, although the plaintiff is in some degree negligent he can nevertheless recover, if the defendant by reasonable care could have avoided the consequences of the plaintiff's negligence. *Grand Trunk Ry.* v. *Ives*, 144 U. S. 408; *Inland etc. Co.* v. *Tolson*, 139 U. S. 551; *The Bernina*, 12 P. D. 58, 61, 89. The principle is the same, whatever the language used: the plaintiff can or cannot recover, accordingly as his negligence is or is not a proximate cause of his injury. In a highway or other case, in the absence of the defendants at the time, the negligence of the plaintiff in selecting an incompetent driver whose incompetency contributed to the injury would be, as matter of law, a proximate cause of the injury. If the defendants were present at the time of the accident, the plaintiff could no more recover for an injury to which his negligence in the selection

of a driver through the incompetency of the driver contributed, than if they were absent. If, in spite of the negligence of the plaintiff in selecting a driver, the defendants by care could have prevented injury to the plaintiff in the position he occupied in the care of an incompetent driver, their failure to do so would be the sole cause of an injury which the plaintiff at the time could not prevent. Whatever the driver may have done would be immaterial, because care on the part of the defendants would have prevented the injury. Their negligence would have been its sole cause, to which neither the prior negligence of the plaintiff nor the recklessness of the driver would have contributed in a legal sense.

Such was the theory of the instructions to the effect that the negligence of the plaintiff furnished merely the occasion of the injury, and that the reckless conduct of Reagan was no defence. These instructions, which were excepted to, amount to a ruling that, as matter of law, the act of Reagan of which the defendants offered proof was not a proximate cause of the injury. Such ruling may be correct, and generally would be so. It would plainly be incorrect if Reagan's act was in fact a proximate cause of the injury. The instructions given as to the defendants' care were correct. If it were found that the defendants were in fault, because the motorman did not stop the car as soon as he ought under all the circumstances of the case and thereby failed to avoid the injury, the instructions as to the plaintiff's fault were also correct, because in such case a negligent act of Reagan's which the defendants ought to have foreseen, or in spite of which the motorman ought to have prevented the injury, could not have been its proximate cause. But while the instructions as a whole were technically correct, the plain tendency of those above recited (to which exception was taken), together with the omission to refer to Reagan's conduct on the question of the defendants' care, was to cause the jury to understand that the plaintiff's negligence in being with a drunken driver and the latter's careless conduct at the time were entirely immaterial and were not to be considered by them at all in the case. They were told that the fact that Reagan was grossly careless was no defence. His acts at the time were competent for consideration on the question of the motorman's care, might be entirely decisive, and could in ordinary language be spoken of as a complete defence. Upon the whole case, the tendency of the instructions to mislead the jury appears so plain that it is probable justice may not have been done and that there ought to be a new trial.

*Verdict set aside.*

BINGHAM, J., did not sit: the others concurred.