Carroll,  }
Jan. 4, 1910. }

GIBSON & a., *Ex'rs*, v. BOSTON & a., *Ap'ts*.

In an appeal from the probate of a will, evidence as to declarations of the
   executor concerning the testator's mental condition is not admissible as
   affirmative proof of a lack of testamentary capacity, on the ground that
   they constitute admissions against interest.
In such a proceeding, evidence as to the declarations of a legatee, who is
   charged with participation in a fraudulent scheme to procure the execution
   of the will, is admissible upon the question of undue influence, although he
   is not party to the suit.
Where incompetent evidence is erroneously admitted, it is incumbent upon
   the party who offered it to demonstrate its probable harmlessness.
An erroneous instruction as to the use which may be made of evidence is not
   rendered harmless by the fact that the testimony was admissible for a
   purpose not suggested at the trial.

APPEAL, from the probate of the will of William H. Randall.
Two issues were submitted to the jury: (1) Was the testator of
sound mind? (2) Was the will produced by undue influence?
The jury answered the first question in the negative and returned
no answer to the second. Transferred from the June term, 1908,
of the superior court by *Chamberlin*, J.

1. Subject to exception, the defendants were permitted to ask two
of the attesting witnesses what they had heard Gibson say in
respect to writing a will for Randall. The first witness testified
that Gibson said "he would start in to draw the will and had to
give it up several times." The second witness testified that
Gibson said "he had tried several times to make Mr. Randall's
will; Mr. Randall would call on him, he would want his will
made, and he had tried several times, but he never was successful."
He did not write it "because he did n't like to—did n't like to
take the responsibility unless Mr. Randall told him just how, and
Mr. Randall did n't do it. Mr. Gibson did n't want the responsi-
bility of doing the dictating. He wanted Mr. Randall's voice."
Again the witness testified that Gibson said Randall came "to
him several times requesting him to draw up his will, and that he
would get ready and commence and then [Randall] would give
out and could n't dictate—could n't tell him."

Subsequently Gibson was called and testified in respect to the
same matter. He said Randall spoke to him two or three times
about writing a will, and afterward at Randall's request he went
to his house twice to write it. The first time Randall said he
wanted to give each of the defendants a dollar. When asked

what next, he said: "I don't know exactly; If I leave it right there, will my property go to my other relatives?" When advised that it would not, he said: "Well, I do not know what to say." Upon Gibson's advising him to think it over, he asked for advice as to what he should do. Gibson declined to give the advice, and the interview closed. The second interview was practically a repetition of the first, except that Gibson advised Randall to get one Wilder to write his will.

2. Subject to exception, the defendants were permitted to show what one Carleton, a legatee and one of the persons charged with unduly influencing Randall, said to one of the defendants after the will was written, but before it was executed.

3. There was evidence tending to prove that Randall's family suffered from a mental disability similar to his. The plaintiffs having introduced evidence tending to prove that the symptoms ascribed to Randall had no relation to heredity, the defendants were permitted, subject to exception, to ask a witness, who said he had heard the family history, whether that history contradicted or confirmed his theory of Randall's capacity.

*John B. Nash* and *Niles & Upton* (*Mr. Niles* orally), for the plaintiffs.

*Leslie P. Snow* and *John C. L. Wood* (*Mr. Snow* orally), for the defendants.

PEASLEE, J. 1. The evidence excepted to appears to have been ruled in upon the theory that it was the admission of a party in interest, and so competent proof of the issues on trial. When it was first offered and objected to, counsel urged that "what he said, if it was against his interest in sustaining this will, would be admissible." The ruling of the court was: "You may put it in on that theory." When it was offered through the second witness, the court said that the statements were those of "Gibson, who was executor of the will and appears here as executor; and they are admitted, gentlemen, simply as bearing upon the interest of Mr. Gibson in sustaining the will." It is not entirely clear what was meant by the last remark to the jury. Under some circumstances it might be intended to convey the thought that the evidence was admitted to contradict Gibson. It could not have had that meaning here, for Gibson had not testified, and the evidence was not offered for that purpose. From all that occurred, the jury must have understood that they were to use the so-called admissions as affirmative proof of the facts recited therein. The admission of the evidence for such a purpose was

error. " Generally, the admissions of a guardian, or of an executor or administrator, made before he was clothed with that trust, or of a *prochien amy*, made before the commencement of the suit, cannot be received either against the ward or infant in the one case, or against himself, as the representative of heirs, devisees, and creditors, in the other, though it may bind the person himself, when he is afterwards a party *suo jure* in another action." *Moore* v. *Butler*, 48 N. H. 161, 170.

The defendants concede that such a ruling could not be sustained, and they seek to avoid its effect. Their first position is that Gibson subsequently testified to the same facts, and therefore the error was harmless. The record does not sustain this claim. The fair import of his testimony is that Randall knew what he wished to do with his property, while Gibson lacked the legal knowledge necessary to enable Randall to carry out his purpose. On the other hand, it could well be found from the admissions that Gibson failed to draft the will because Randall was incapable of telling what was to be done with his property. If other inferences less unfavorable to the will might equally well be drawn from the admissions, it cannot avail the defendants on the ground now under consideration. The evidence was imcompetent. They seek to show that it was harmless. To do this, they must demonstrate that in all probability it could not work a harmful result. It is not sufficient that it may not have done so. If " it is probable justice may not have been done " (*Hanson* v. *Railway*, 73 N. H. 395, 399), the error is one of substance.

It is also urged that the evidence was admissible as tending to contradict Gibson. This is true ; and if it had been admitted for this purpose, the somewhat novel procedure of contradicting a witness before he testified might not be cause for disturbing the verdict. The difficulty with the defendants' case is that this was not the purpose for which the evidence was admitted. Cases holding that it is not error to admit evidence if it is competent for any purpose or upon any issue are not in point here. No case has been cited to support the proposition, that because evidence is competent for one purpose, it is not error to instruct the jury to use it for a purpose for which it is not competent. The cases relied upon are those where evidence was admitted generally, and the excepting parties failed because they did not secure a ruling defining the purposes for which the evidence might be used. Here the use was limited and limited wrongly. It cannot avail the defendants that it might have been limited correctly. Because the jury were permitted to use Gibson's admissions as affirmative evidence of Randall's testamentary capacity, the verdict must be set aside.

2. The testimony as to what Carleton said appears to have been admitted on the grounds that he was a legatee, and that it was a part of his conduct in carrying out a scheme to surreptitiously procure the execution of a will by a person of feeble mind. The first ground is untenable. *Carpenter* v. *Hatch*, 64 N. H. 573. So far as the recital tended to prove fraud or undue influence, it was admissible. It was a part of the conduct of the person charged with misconduct, and as to that issue it was not hearsay.

3. If the error in the question propounded to the physician was a substantial one, it can readily be obviated at another trial by a properly framed hypothetical interrogatory.

*Verdict set aside.*

All concurred.