KRISCHBAUM ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* DILLON ET AL., APPELLEES AND CROSS-APPELLANTS.

[Cite as Krischbaum *v.* Dillon (1991), 58 Ohio St. 3d 58.]

(No. 89-1585—Submitted October 16, 1990—Decided March 13, 1991.)

*Firmin, Sprague & Huffman Co., L.P.A., John C. Firmin* and *Thomas P. Kemp,* for appellants and cross-appellees.

*Hackenberg, Beutler & Rasmussen* and *Robert A. Beutler, Jr.,* for appellees and cross-appellants.

FAIN, J.  The principal issue in this case is whether a rebuttable presumption of undue influence should arise whenever an attorney, unrelated to a testator by blood or marriage, prepares a will in which he or she is named as a beneficiary. We answer this question in the affirmative.

## I

We start by considering the contestants' fourth proposition of law, in which they contend that a presumption of undue influence arises whenever an attorney at law assists a client in the preparation of a will, and the attorney, who is not related to the testator by blood or by marriage, is a beneficiary under the will. The contestants claim that the trial court erred when it refused to charge the jury with either of their alternatively proposed jury instructions on the presumption of undue influence.[2]

---

[2] The proposed instructions are as follows:

*"SPECIAL INSTRUCTION #2*

"Although I explained the burden of proof is on the Plaintiffs, in a case, as the present, when an attorney writes the Will and takes a large interest under it, and he is

## A

Dillon initially contends that contestants failed to preserve this issue of presumption of undue influence for review in accordance with Civ. R. 51(A).[3]

Dillon maintains that because the contestants failed to object to the given jury instructions, they are precluded from asserting as error the failure of the trial court to give the proposed jury instructions.

Where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and that the complaining party has unsuccessfully requested the inclusion of that law in the trial court's charge to the jury, that party does not waive his objection to the court's charge by failing to make a formal objection to the charge as actually given by the trial court. *Presley* v. *Norwood* (1973), 36 Ohio St. 2d 29, 65 O.O. 2d 129, 303 N.E. 2d 81, paragraph one of the syllabus. The purpose of Civ. R. 51(A) is to provide a trial court with an opportunity to correct any errors in the instructions as given, and that purpose is fully served where the appellant has formally re-quested an instruction to the contrary, and the issue has been argued to the trial court.

Krischbaum did not formally object to the trial court's failure to give the proposed jury instructions at issue or to the instructions the trial court gave the jury prior to retiring. However, the trial court and counsel for the parties engaged in a lengthy discussion regarding the proposed instructions at issue, making their positions clear to the trial court. Therefore, we agree with the court of appeals that Krischbaum did not waive his objections to the trial court's refusal to give the proposed instructions when he did not formally object to the given charge.

## B

Although we have not addressed this issue of presumption of undue influence previously, Ohio appellate courts considering the issue have declined to hold that a presumption of undue influence arises when an attorney prepares a will in which he or she is named as a beneficiary. *Cave* v. *McLean* (1939), 66 Ohio App. 196, 19 O.O. 517, 32 N.E. 2d 581; *Caswell* v.

---

neither related by blood nor by marriage, there is a presumption of undue influence and coercion and the burden is on the attorney to rebut and overcome this presumption by clear and convincing evidence. (Herein follows a general charge as to clear and convincing evidence).

"SPECIAL INSTRUCTION #2 —
ALTERNATIVE #1

"Although I explained the burden of proof is on the Plaintiffs, in a case as the present, when an attorney writes a Will and Takes a large interest under it, and he is neither related by blood nor marriage, there is a presumption of undue influence or coercion, and the burden is on the attorney to rebut and overcome this presumption by a preponderance of the evidence.

"SPECIAL INSTRUCTION #2 —
ALTERNATIVE #2

"Although I explained the burden of proof is on the Plaintiffs, in a case as the present, when an attorney writes a Will and takes a large interest under it, and he is neither related by blood nor marriage, there is an inference of undue influence or coercion[.]"

[3] Civ. R. 51(A) provides in part:

"A party may not assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds for his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

*Lermann* (1948), 85 Ohio App. 200, 40 O.O. 148, 88 N.E. 2d 405.

A number of states have adopted the view that a presumption of undue influence arises where a confidential or fiduciary relationship exists between a testator and a beneficiary under a will who is not related by blood or marriage to the testator, and who actively participates in the preparation or execution of the will.[4] Under Roman law,[5] bequests to the scrivener of a will were invalid, and such bequests were viewed with skepticism by English courts not too long after this country declared its independence.[6]

In adopting the presumption of undue influence, courts have focused upon the attorney-client relationship as demanding the highest level of trust and confidence between the parties.

A client's dependence upon, and trust in, his attorney's skill, disinterested advice, and ethical conduct exceeds the trust and confidence found in most fiduciary relationships. Seldom is the client's dependence upon, and trust in, his attorney greater than when, contemplating his own mortality, he seeks the attorney's advice, guidance, and drafting skill in the preparation of a will to dispose of his estate after death. These consultations are often among the most private to take place between an attorney and his client. The client is dealing with his innermost thoughts and feelings, which he may not wish to share with his spouse, children and other next of kin.

Because the decisions that go into the preparation of a will are so inherently private, and because, by

---

[4] *In re Estate of Witt* (1936), 198 Cal. 407, 245 P. 197; *In re Nutt's Estate* (1919), 181 Cal. 522, 185 P. 393; *St. Leger's Appeal from Probate* (1867), 34 Conn. 434, 91 Am. Dec. 735; *Zinnser* v. *Gregory* (Fla. 1955), 77 So. 2d 611; *Dial* v. *Welker* (1927), 328 Ill. 56, 159 N.E. 286; *In re Will of Moses* (Miss. 1969), 227 So. 2d 829; *Simmons* v. *Inman* (Mo. 1971), 471 S.W. 2d 203; *In re Bishop's Will* (1924), 96 N.J. Eq. 595, 125 A. 384; *Radin* v. *Opperman* (1978), 64 App. Div. 2d 820, 407 N.Y. Supp. 2d 303, and (1978), 64 App. Div. 2d 821, 408 N.Y. Supp. 2d 792; *In re Harjoche's Estate* (1944), 193 Okla. 631, 146 P. 2d 130; *In re Lobb's Will* (1945), 177 Ore. 162, 160 P. 2d 295; *In re Estate of Nelson* (S.D. 1978), 274 N.W. 2d 584; *In re Estate of Swan* (1956), 4 Utah 2d 277, 293 P. 2d 682; *In re Smith's Estate* (1966), 68 Wash. 2d 145, 411 P. 2d 879, and 68 Wash. 2d 835, 416 P. 2d 124. See, generally, *Raney* v. *Raney* (1927), 216 Ala. 30, 112 So. 313; *Orr* v. *Love* (1955), 225 Ark. 505, 283 S.W. 2d 667; *In re Palmer's Estate* (Fla. 1950), 48 So. 2d 732; *In re Estate of Keeley* (1926), 167 Minn. 120, 208 N.W. 535; *NcNeill* v. *NcNeill* (1943), 223 N.C. 178, 25 S.E. 2d 615; *Barnes* v. *Bess* (1938), 171 Va. 1, 197 S.E. 403.

*Contra:*

*Conner* v. *Brown* (1938), 39 Del. 529, 3 A. 2d 64; *Carpenter* v. *Hatch* (1888), 64 N.H. 573, 15 A. 219; *In re Gold's Estate* (1962), 408 Pa. 41, 182 A. 2d 707. See, generally, *Carmen* v. *Kight* (1911), 85 Kan. 18, 116 P. 231; *Griffith* v. *Diffenderffer* (1878), 50 Md. 466; *Long* v. *Long* (1939), 133 Tex. 96, 125 S.W. 2d 1034.

*Inference, rather than presumption, arises:*

*Graham* v. *Courtright* (1917), 180 Iowa 394, 161 N.W. 774; *Stormon* v. *Weiss* (N.D. 1954), 65 N.W. 2d 475, 519. See, generally, *Gay* v. *Gay* (1948), 308 Ky. 539, 215 S.W. 2d 92; *In re Perssion's Estate* (1963), 20 Wis. 2d 537, 123 N.W. 2d 465.

[5] 4 Digest of Justinian (1985) 826 (Book Forty-Eight, Title 10, Section 15) (supplement to the *lex Cornelia* ordered in an edict by the Emperor Claudius).

[6] *Paske* v. *Ollat* (1815), 2 Phil. Ecc. Cas. 323, 161 Eng. Rep. 1158; *Hatch* v. *Hatch* (1804), 9 Ves. Jr. 292, 32 Eng. Rep. 615 (confidential relationship of guardian and ward viewed with suspicion).

definition, the testator will not be available after his death, when the will is offered for probate, to correct any errors that the attorney may have made, whether they are negligent errors or of a more sinister kind, a client is unusually dependent upon his attorney's professional advice and skill when he consults the attorney to have a will drawn. The client will have no opportunity to protect himself from the attorney's negligent or infamous misconduct.

It is for precisely these reasons that EC 5-5 of the Code of Professional Responsibility requires that, other than in exceptional circumstances, a lawyer must insist that an instrument in which he is beneficially named be prepared by another lawyer.[7]

Dillon argues that EC 5-5 was fully satisfied when he urged his client to consult another lawyer. We do not agree. Had there been no time to consult with another lawyer, this would have been an "exceptional circumstance." However, Krischbaum lived for nearly four years after he executed the will. There is no evidence to suggest exigent circumstances. Therefore, Dillon was required to insist, not merely to urge, that another lawyer write the will. In this context, "to insist" that another lawyer write the will means that the lawyer/beneficiary must refuse to write it himself.

Because of the peculiar susceptibility of a client/testator to the influence of the attorney he consults in connection with the preparation of his will, we agree with those jurisdictions that have recognized that a rebuttable presumption arises whenever an attorney, unrelated to the testator by blood or by marriage, assists in the preparation of a will in which he is a named beneficiary. If the attorney has not, in fact, taken advantage of the unusual position of trust in which those circumstances naturally tend to place him, in order to gain an undue advantage, let him present his evidence and persuade the jury, by a preponderance of the evidence, that he has not obtained his bequest through undue influence. In most cases of this kind, the attorney will have superior, if not exclusive, access to the facts relevant to the influence he has brought to bear upon the testator, so it will ordinarily not be a hardship to impose upon him the burden of overcoming the presumption.

For all the foregoing reasons, we hold that a presumption of undue influence, rebuttable by a preponderance of the evidence, arises when:

(1) the relationship of attorney and client exists between a testator and an attorney,

(2) the attorney is named as a beneficiary in the will,

(3) the attorney/beneficiary is not related by blood or marriage to the testator, and

(4) the attorney/beneficiary actively participates in the preparation of the will.

---

[7] EC 5-5 provides:

"A lawyer should not suggest to his client that a gift be made to himself or for his benefit. If a lawyer accepts a gift from his client, he is peculiarly susceptible to the charge that he unduly influenced or overreached the client. If a client voluntarily offers to make a gift to his lawyer, the lawyer may accept the gift, but before doing so, he should urge ·that his client secure disinterested advice from an independent, competent person who is cognizant of all the circumstances. Other than in exceptional circumstances a lawyer should insist that an instrument in which his client desires to name him beneficially be prepared by another lawyer selected by the client."

Dillon contends that a presumption of undue influence would conflict with EC 5-5 of the Code of Professional Responsibility. As previously noted, we construe EC 5-5 to be in harmony with, not inconsistent with, the principle that a bequest to an attorney who has written a will should be viewed skeptically.

Dillon also contends that a presumption of undue influence is contrary to the Ohio statutory presumption of the validity of a will that has been admitted to probate, contained in R.C. 2107.74.[8] R.C. 2107.74 provides that the order admitting a will to probate is prima facie evidence of the attestation, execution and validity of the will. The presumption of validity that arises from the probate of the will and the presumption of undue influence are not in conflict.

"Prima facie evidence" is not conclusive. The term denotes evidence which will support, but not require, a verdict in favor of the party offering the evidence. Therefore, we conclude that R.C. 2107.74 does not create an irrebuttable presumption of validity when a will is admitted to probate.

The statutory presumption of validity, being rebuttable, shifts the burden of persuasion upon the contestants in an action to contest a will that has been admitted to probate. "A presumption arises from the order of admission of the will to probate that the testator was free from restraint. The burden of proving undue influence is upon the contestants * * *." *West* v. *Henry* (1962), 173 Ohio St. 498, 502, 20 O.O. 2d 119, 121, 184 N.E. 2d 200, 203; *Kata* v. *Second Natl. Bank* (1971), 26 Ohio St. 2d 210, 55 O.O. 2d 458, 271 N.E. 2d 292; *Kennedy* v. *Walcutt* (1928), 118 Ohio St. 442, 161 N.E. 336; *Hall* v. *Hall* (1908), 78 Ohio St. 415, 85 N.E. 1125. It has been held that this burden never shifts. However, pursuant to R.C. 2107.74, the presumption of validity from an order admitting the will to probate is not conclusive.[9]

The presumption of undue influence that we adopt in this case does not arise from the admission of a will to probate; therefore, it is not inconsistent with the presumption of validity that does arise from the admission of a will to probate. The presumption of undue influence arises upon proof that (i) the relationship between an attorney and testator is that of attorney and client, (ii) the attorney is a beneficiary in the will, (iii) the attorney is not related by blood or by marriage to the testator, and (iv) the attorney actively participated in the preparation of the will. Once the contestants establish these facts, a rebuttable presumption of undue influence arises, thereby shifting onto the attorney the burden

---

[8] R.C. 2107.74 provides as follows:

"On the trial of any will contest under section 2107.71 of the Revised Code, the order of probate is prima-facie evidence of the attestation, execution, and a validity of the will or codicil. The contesting party may call any witness to the will as upon cross examination."

[9] To the extent that prior decisions of this court have held that the burden of proof is cast upon the contestants in an action to contest a will, and that this burden can never be shifted as a result of facts proven by the contestants, we overrule those decisions in that regard only. Those decisions are as follows: *Mears* v. *Mears* (1864), 15 Ohio St. 90, paragraph four of the syllabus; *Kennedy* v. *Walcutt* (1928), 118 Ohio St. 442, 161 N.E. 336, paragraph six of the syllabus; *Kata* v. *Second Natl. Bank* (1971), 26 Ohio St. 2d 210, 55 O.O. 2d 458, 271 N.E. 2d 292, paragraph one of the syllabus.

of persuasion, by a preponderance of the evidence, that he has not brought undue influence to bear upon the testator. This may be shown by evidence, like the evidence adduced in this case, that the testator had an intention to benefit the attorney that was independent of any influence that the attorney may have been in a position to exert upon the testator. The fact that the testator was generally strong-willed, firm in both mind and intention, would be relevant evidence upon this issue, as would any facts tending to explain why the testator might not have intended to benefit other natural objects of his bounty, such as the contestants in this case. Thus, the evidence in this case tending to show that the contestants had declined an invitation to visit their uncle twenty-four years preceding his death and had seen him but once or twice during that interim was relevant.

The presumption of undue influence arises once the contestants prove the predicates for the presumption, and the burden to rebut the presumption then shifts to the attorney; however, the burden of proof shifts only in regard to the particular bequest to the attorney, and this burden does not affect the validity of other portions of the will. Thus, the statutory presumption in favor of the validity of the will remains in effect; it is only the particular bequest to the attorney that is the subject of a rebuttable presumption of undue influence. The two presumptions arise from different facts and concern different subjects.

The contestants' fourth proposition of law is sustained.

## II

In their first proposition of law, the contestants contend that the jury should have been permitted to hear evidence that Dillon and Riker initially failed to disclose the loans that each had received, using Riker's general power of attorney, from Krischbaum's savings account during Krischbaum's life. This evidence was proffered during the course of the trial. By judgment entry filed March 7, 1986, Riker's Motion to Limit Testimony and Evidence was sustained. Immediately prior to the commencement of trial and following a hearing, Dillon's Motion to Limit Testimony and Evidence was also sustained.

Dillon and Riker specifically requested the trial court to exclude all evidence concerning the administration of Krischbaum's estate, and generally all events which occurred after Krischbaum's death. Additionally, Dillon sought to exclude evidence of the proceedings instituted against him after Krischbaum's death by the Board of Commissioners on Grievances and Discipline of the Supreme Court. Contestants contend that the exclusionary ruling disallowed relevant evidence bearing on the preparation of the will and the alleged fact that undue influence was exerted, as set forth in *West* v. *Henry, supra.*

The exhibit indicates that Dillon and Riker failed to disclose any debt owed to Krischbaum in Riker's application for Authority to Administer Estate and in the Schedule of Assets until after the will contest action was filed. The contestants argue that this failure to disclose indebtedness is relevant evidence of two elements of undue influence as set forth in *West, supra.*

Elements of undue influence include "a susceptible testator, another's opportunity to exert it, the fact of improper influence exerted or attempted, and the result showing the effect of such influence." *West, supra,* at 501 and 510-511, 20 O.O. 2d at 121 and

126, 184 N.E. 2d at 202 and 208. Contestants assert that the actions of Riker and Dillon after Krischbaum's death relate back to their opportunity to exert undue influence and the fact of improper influence exerted or attempted.

A trial court has broad discretion in determining whether to admit or exclude evidence. Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand. *State* v. *Withers* (1975), 44 Ohio St. 2d 53, 55, 73 O.O. 2d 280, 281, 337 N.E. 2d 780, 781, citing *State* v. *Hymore* (1967), 9 Ohio St. 2d 122, 128, 38 O.O. 2d 298, 302, 224 N.E. 2d 126, 130.

Although a wide range of inquiry may be necessary to provide the jury with facts and inferences bearing on the preparation of the will due to the nature of a case involving undue influence, which is usually proved by circumstantial evidence and inferences drawn from a full presentation of facts that may be inconclusive when considered separately, *Bd. of Edn. of Pickaway Twp. Rural School Dist.* v. *Phillips* (1921), 103 Ohio St. 622, 626, 134 N.E. 646, 648, the evidence sought to be introduced is nevertheless subject to the general restrictions concerning relevance. "Relevant evidence" is defined pursuant to Evid. R. 401 as:

"* * * [E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Relevant evidence may be excluded pursuant to Evid. R. 403:

"(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

"(B) Exclusion discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

The contestants seek to admit evidence of alleged concealment by Dillon and Riker of their indebtedness to Krischbaum. These acts occurred after Krischbaum's death and approximately four years after the execution of Krischbaum's will. At most, these acts are of tangential significance with respect to whether Dillon exerted undue influence upon Krischbaum before the latter's death. Whether the probative value of this evidence was outweighed by the prejudicial effect likely to result from the jury's being made aware that Dillon and Riker had filed incomplete or misleading papers in the probate court was a matter for determination within the trial court's sound discretion. We agree with the court of appeals that the trial court did not abuse its discretion by excluding this evidence.

The contestants' first proposition of law is overruled.

### III

In their second proposition of law, the contestants assert that findings and conclusions of the Board of Commissioners on Grievances and Discipline of the Supreme Court in the disciplinary case against Dillon should have been admitted in evidence for consideration by the jury.[10]

_____

[10] Plaintiff's Exhibit P-18, which was excluded, contained the findings, conclusions and recommendation of the board of commissioners that Dillon, in his dealings with his client, Krischbaum, violated DR 5-101(A) and 5-104(A). The board's certi-

The contestants assert that the board's findings are relevant to the issues of whether Dillon had the opportunity to exert undue influence and whether, in fact, Dillon exerted undue influence. The contestants rely upon the case of *In re Estate of Dankbar* (Iowa 1988), 430 N.W. 2d 124, for the proposition that evidence of an attorney's violation of ethical standards is admissible in a will contest. However, in *Dankbar,* the evidence admitted did not include the findings and conclusions of an administrative body as to whether or not an attorney violated the Disciplinary Rules, but rather the evidence admitted was expert testimony that could have been expected to assist the jury in understanding the relevant standards of conduct prescribed by the Code of Professional Responsibility. Furthermore, the expert did not testify concerning the ultimate issue of whether the attorney unduly influenced the testator by not acting in conformity with those standards. The issue whether the attorney exceeded the bounds of accepted practice in exerting undue influence was left for the jury to determine in *Dankbar, supra,* uninfluenced by the findings or conclusions of another finder of fact in parallel proceedings.

In Ohio, an unsuccessful litigant in a judicial or quasi-judicial proceeding against one party is not precluded from relitigating an issue against a different party, except under circumstances not herein material. *Goodson* v. *McDonough Power Equipment, Inc.* (1983), 2 Ohio St. 3d 193, 2 OBR 732, 443 N.E. 2d 978.

Thus, Dillon was not precluded, by his lack of success in the disciplinary proceedings against him, from relitigating in this civil action against the contestants the issue of whether he violated the Code of Professional Responsibility. It follows that it was for the jury in this case to determine, based upon all the evidence presented, whether Dillon, in preparing a will that named him as a beneficiary, acted unethically or unprofessionally, and thereby exerted an influence that was undue. The findings and conclusions of the board of commissioners are not evidence, but are rather the findings of another finder of fact in another proceeding, involving different parties. To have made those findings and conclusions known to the jury in this case would have invaded the province of the jury, which alone had the duty and power to resolve disputed issues of fact in this case.

If, in a tort action, brought by A against D, A should seek to introduce in evidence a jury's finding in a similar action by B against D, arising out of the same allegedly tortious conduct, that D's conduct was negligent, that finding would not be admissible because it would invite the jury in A's case to ignore its independent respon-

---

fied report to the Ohio Supreme Court was pending at the time of trial. See *Disciplinary Counsel* v. *Dillon* (1986), 28 Ohio St. 3d 114, 28 OBR 213, 502 N.E. 2d 637, for final disposition of the board's recommendation.

DR 5-101(A) provides:

"Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

DR 5-104(A) provides:

"A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

sibility to find the facts based upon the evidence submitted to it, by deferring to the findings already made by the jury in B's case. Similarly, the jury in this case should not have been permitted to consider the findings and conclusions of the board of commissioners; the jury in this case had its own independent responsibility to find the facts as between Dillon and the contestants. If, for example, the jury in this case was more inclined than was the board of commissioners to credit Dillon's testimony in full, that was the jury's prerogative.

The contestants' second proposition of law is overruled.

### IV

In their remaining proposition of law, the contestants argue that the jury should have been permitted to consider provisions of the Code of Professional Responsibility, specifically DR 5-101 (A), 5-104(A), and EC 5-5, which generally require that an attorney be in a position to give disinterested advice to his client — that is, the attorney should not place himself in a position in which his personal interests might conflict with the interests of his client.

The Code of Professional Responsibility was adopted by this court pursuant to the authority to prescribe rules governing the practice of law contained in Section 5(B), Article IV of the Ohio Constitution. The code has the force of law; this is especially true with respect to the Disciplinary Rules, which are described in the code's preamble as "mandatory," rather than "aspirational," in nature.

The obvious purpose of the particular provisions in the Code of Professional Responsibility that the contestants sought to put before the jury is to protect clients from abuses that are likely to occur if attorneys offer advice while having potentially conflict-

ing interests. Laws intended to protect individuals may create norms of behavior, the violation of which may be deemed to be actionable upon the theory that the violator has not acted with due care. *Eisenhuth* v. *Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E. 2d 440. While the failure to comply with general rules of conduct, like the rules of conduct involved in the case before us, will not ordinarily constitute negligence *per se,* it is a circumstance that can be considered, along with other facts and circumstances, in determining whether the actor has acted with reasonable concern for the safety and welfare of others — that is, with due care. See *id.* at 374-375, 53 O.O. at 278, 119 N.E. 2d at 444.

In the case before us, the issue was whether the bequest to Dillon was the product of undue influence. The phrase "undue influence" suggests a two-stage inquiry. First, it must be determined whether the bequest was the result of influence brought to bear upon the testator. Next, it must be determined whether that influence was "undue." Not every use of influence will void a bequest. For example, no reasonable person would find undue a daughter's suggestion to her invalid mother, whom she has boarded and cared for at considerable trouble and expense for many years, that it would be nice to be remembered in her mother's will, even though it could be shown that a bequest to the daughter was the direct and proximate result of the daughter's suggestion.

In determining whether a particular influence brought to bear upon a testator was "undue," the focus is whether the influence was reasonable, given all the prevailing facts and circumstances. In other words, would a reasonable person in the actor's position have done what the actor did? In

this connection, the role of an attorney is peculiarly susceptible to the exercise of undue influence, for all the reasons set forth in Part IB, above. Not only is the testator particularly vulnerable to his attorney's influence, but also, the attorney, unlike others, will often be in a position to exercise that influence even after the will has been executed. A disinterested attorney could be expected to pick up cues, even fairly subtle cues, that his client's testamentary intentions may have changed since the will was executed. The disinterested attorney could then be expected to suggest that his client consider whether to amend the testamentary disposition by executing a codicil or a new will. On the other hand, an attorney who is named as a beneficiary in the will, like Dillon, will have an obvious and powerful disincentive to suggest to his client that it may be an appropriate time to consider revising the will. When the testator's attorney is a beneficiary of the will, like Dillon, there is even the possibility that the attorney might use his position as the testator's confidential advisor to frustrate a clearly expressed intention to alter the existing testamentary disposition. This would be a form of undue influence that could be exerted years after the execution of the will naming the attorney as a beneficiary.

Because the norms of behavior expressed in the Code of Professional Responsibility are directly relevant to the issue of what a reasonable person in Dillon's position would have done, we conclude that they are relevant to the issue of whether Dillon brought undue influence to bear upon Krischbaum. Accordingly, the trial court erred when it excluded that evidence, which the contestants proffered.

The contestants' third proposition of law is sustained.

V

In his cross-appeal, Dillon has asserted three propositions of law. In his first proposition of law, Dillon contends that it is contrary to public policy for the contestants in a will contest to settle the action with some legatees to the detriment of the remaining legatees. Dillon relies upon *Walker* v. *Hollister* (1917), 20 Ohio N.P. (N.S.) 225, 28 Ohio Dec. 299, to support his proposition. The court of appeals below concluded that the facts and circumstances of the instant case are distinguishable from *Walker*. We agree.

In *Walker,* a beneficiary agreed to join the contestant in the complaint against other legatees to set aside a will; in return, the contestant agreed to pay the beneficiary an amount equal to her legacy, if the contestant succeeded in setting aside the will. In the instant case, Riker did not agree to join the contestants in their complaint. In fact, Riker testified on Dillon's behalf in support of the will. Although, as a result of settling with the contestants, Riker abandoned his position in the litigation, he had no obligation to maintain his position notwithstanding that he had reached a satisfactory settlement with the contestants.

"The law favors prevention of litigation by compromise and settlement. * * *" *State, ex rel. Wright,* v. *Weyandt* (1977), 50 Ohio St. 2d 194, 4 O.O. 3d 383, 363 N.E. 2d 1387, syllabus; *Shallenberger* v. *Motorists Mut. Ins. Co.* (1958), 167 Ohio St. 494, 505, 5 O.O. 2d 173, 180, 150 N.E. 2d 295, 302. Given the explosion of litigation so characteristic of the modern era, it is essential that the settlement of litigation be facilitated, not impeded. So long as there is no evidence of collusion, in bad faith, to the detriment of other, non-settling parties, the settle-

ment of litigation will be encouraged and upheld.

Dillon's first proposition of law is overruled.

## VI

In his second proposition of law, Dillon argues that a plaintiff in an action to contest a will must be deemed to be on both sides of the action when he reaches agreement with only some of the legatees, and that equity precludes a plaintiff from holding both under and against a will.

Dillon, again, relies upon the case of *Walker, supra,* to support this proposition of law. We agree with the court of appeals in the case before us that the settlement between Riker and the contestants did not permit the contestants to claim both under and against the will, and that Dillon's rights were not prejudiced nor were any principles of equity violated.

*Walker* appears to have involved a general attack upon a will, based upon an alleged lack of testamentary capacity, rather than a claim that certain bequests were procured through undue influence.[11] In *Walker,* the contestant in the will contest action purchased a $2,000 legacy from a charitable organization and obtained a written assignment which authorized the ex-

ecutor to pay the legacy to her. Thus, the contestant acquired an interest in the validity of the will that was contrary to the position asserted by her, as a contestant, that the will was not valid. In the case before us, the contestants have not acquired an interest in the validity of Dillon's bequest, which is all that they are challenging. Consequently, the contestants in the case before us are not in the position of maintaining inconsistent positions or having inconsistent interests in the outcome of the litigation. Thus, *Walker, supra,* even if it is good law, is distinguishable.

Dillon's second proposition of law is overruled.

## VII

In his third and final proposition of law, Dillon contends that the plaintiffs did not properly join the necessary parties in the will contest action as mandated pursuant to R.C. 2107.73,[12] and that the trial court lacked subject matter jurisdiction because Koehler was not substituted as a party in accordance with Civ. R. 25(C).[13]

John H. Koehler was appointed to serve as administrator with will annexed after Riker was removed as executor of the Krischbaum estate. Koehler filed his notice of appearance

---

[11] In an undue influence case, the issue is not whether the entire will is invalid (unless the undue influence was so pervasive that it may have affected the testator's testamentary capacity, generally); rather, the issue is whether one or more particular bequests were the product of undue influence. The invalidation of any particular bequest would not ordinarily invalidate other bequests, or the will, generally.

[12] R.C. 2107.73 provides in part:
"Persons who are necessary parties to

a will contest are as follows: * * * (C) The executor or the administrator with the will annexed[.]"

[13] Civ. R. 25(C) provides:
*"Transfer of Interest.* In case of any transfer of interest, the action may be continued by or against the original party unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (A) of this rule."

in the action on July 25, 1986. The contestants submitted a judgment entry substituting Koehler as a party defendant on October 3, 1986. Dillon filed a memorandum in opposition to the substitution alleging it was not in accordance with the Rules of Civil Procedure. Prior to the commencement of the trial on the morning of October 7, 1986, the trial court approved the entry substituting Koehler as a party defendant in his capacity as administrator with will annexed.

The court of appeals held that Koehler was joined as a party defendant pursuant to the trial court's judgment entry of October 7, 1986, and, therefore, all necessary parties to the action were present before the court. Because Dillon failed to allege any prejudice due to a lack of formal motion and notice, Dillon's assignment of error was overruled.

Dillon contends that the trial court did not have the authority to substitute Koehler as a party because a motion to substitute Koehler was never made as required by Civ. R. 25(C). Dillon contends that he was prejudiced by the trial court's action to the extent that the statute of limitations for the will contest had run. We disagree.

R.C. 2107.72(A) provides:

"The Rules of Civil Procedure govern all aspects of a will contest action, except as otherwise provided in sections 2107.71 to 2107.75 of the Revised Code."

Civ. R. 25(C) provides that an action may be continued by or against the original party where a transfer of interest has occurred. The rule does not require that a substitution of parties be made. To the contrary, the rule provides that the action may be continued against the original party. While the rule provides that a substitution of parties may be directed by the court, upon proper motion, it certainly does not condition subject matter jurisdiction upon substitution of the successor party in interest.

Furthermore, the requirements of R.C. 2107.73 have been satisfied. Riker, both individually and as executor of the Krischbaum estate, was named and served as a party defendant. Koehler, as administrator with will annexed, was later substituted. Therefore, the "necessary party" requirements of R.C. 2107.73 have been met, and jurisdiction was maintained.

Thus, when, after the commencement of a will contest action, the probate court substitutes an administrator with will annexed for the executor originally appointed, and further substitutes the administrator with will annexed as a party in the will contest action, the probate court does not lose jurisdiction simply because no motion to substitute the administrator as a party has been served upon the other parties.

Dillon's third proposition of law is overruled.

## VIII

For the reasons stated in this opinion, the judgment of the court of appeals is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

MIKE FAIN, J., of the Second Appellate District, sitting for RESNICK, J.