OPINIONS OF THE SUPREME COURT OF OHIO
**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.

Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.

NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Cincinnati Bar Association v. Clark.
[Cite as Cincinnati Bar Assn. v. Clark (1994),          Ohio
St.3d        .]
Attorneys at law -- Misconduct -- Two-year suspension with one
     year of the period suspended -- Conduct involving fraud,
     deceit, dishonesty or misrepresentation -- Conduct
     adversely reflecting on fitness to practice law --
     Employment where attorney's and client's interests
     conflict without client's consent after full disclosure --
     Business transaction with client where attorney's and
     client's interests conflict without client's consent after
     full disclosure.
     (No. 94-497 -- Submitted September 14, 1994 -- Decided
December 14, 1994.
     On Certified Report by the Board of Commissioners on
Grievances and Discipline of the Supreme Court, No. 93-09.
     In a complaint filed February 16, 1993, relator,
Cincinnati Bar Association charged respondent, Thomas H. Clark
of Cincinnati, Ohio, Attorney Registration No. 0009206, with
violations of DR 1-102(A)(4) (conduct involving fraud, deceit,
dishonesty, or misrepresentation), 1-102(A)(6) (conduct that
adversely reflects on one's fitness to practice law), 5-101(A)
(employment where attorney's and client's interests conflict
without client's consent after full disclosure), and 5-104(A)
(business transaction with client where attorney's and client's
interest conflict without client's consent after full
disclosure).  A panel of the Board of Commissioners on
Grievances and Discipline of the Supreme Court heard the matter
on October 29, 1993.
     The charges of misconduct resulted from respondent's
representation of Rachel R. Shattuck, who died without heirs in
July 1992 at the age of eighty-eight.  During 1991, respondent
revised Shattuck's will three times, gradually transforming the
mainly charitable bequests she had planned for her nearly
half-million dollar estate into bequests for his or his

family's benefit.  In December 1991, respondent wrote a $10,000 check to himself from one of Shattuck's personal accounts and withdrew another $10,000 for his law firm's use.  The $10,000 withdrawal was credited as payment to the firm of fees by another estate of which respondent was the executor.  In April 1992, when he considered Shattuck unable to sign legal documents, respondent wrote a $4,000 check to one of his sons from a trust account that he had already set up for her with himself as trustee.  He wrote a $7,367.30 to another son from the same account in June 1992.  In the year before and just after Shattuck's death, respondent lost $100,000 of the trust assets in a high-risk investment in another client's company.

Respondent, who represented Shattuck for over thirty-five years, maintained that he had always acted in accordance with her wishes for her assets and estate.  He explained to the panel that he and his family had developed a close friendship with Shattuck over the years, visiting her regularly and including her in holiday celebrations.  Respondent had helped Shattuck choose and move into the senior care facility in which she spent the last years of her life.  Thus, when respondent became seriously ill in 1990, he claims that Shattuck, a former schoolteacher, suggested an arrangement whereby she could help pay for his grandchildren's education.  The changes in her will were purportedly made to serve this goal.

Respondent told the panel that he wrote the $10,000 check to himself because Shattuck wanted to give him a gift of that amount.  He also testified that the checks to his sons were written as loans, although he had described them as gifts in a November 1992 letter to relator.  Respondent had no explanation for the $10,000 withdrawal for his law firm and the false accounting of it, except to say that he considered it a loan to fund year-end bonuses for his associates and staff.  Respondent repaid this $10,000 a few months later without interest.

After Shattuck's death, some friends, who knew of her charitable bequests and to whom she had earlier promised her personal effects, retained an attorney to file a will contest. The attorney discovered the transactions that led to the instant complaint against respondent.  The attorney testified at the hearing that respondent had been very cooperative and forthcoming during his investigation, and that they had reached a settlement.  Pursuant to this settlement, Shattuck's friends received her personal belongings, each of respondent's grandchildren relinquished all but $4,500 of their interests in the estate, and the remaining assets were to be distributed to the charities Shattuck chose in a prior will.  Respondent also repaid to the estate the $10,000 he received in 1991, the money his sons received in 1992, and the $100,000 investment loss.

Respondent, who is sixty-eight years old and in ill health, was admitted to the Ohio Bar in 1949.  In his forty-four years of practice, he has never before been the subject of disciplinary action.  Respondent testified he was unaware that his having prepared Shattuck's will to benefit his family was a basis for claiming misconduct or undue influence. See Mahoning Cty. Bar Assn. v. Theofilos (1988), 36 Ohio St.3d 43, 521 N.E.2d 797; Krischbaum v. Dillon (1991), 58 Ohio St.3d 58, 567 N.E.2d 1291.

The panel determined from this evidence that respondent

had violated the Disciplinary Rules as charged in the complaint.  Before recommending a sanction, the panel considered numerous character references from judges and attorneys in the Cincinnati area, respondent's cooperation in relator's investigation, his repayments to Shattuck's estate, and his declining health.  The panel also acknowledged respondent's genuine concern and care for Shattuck over many years.  However, the panel was troubled by the essentially complete control respondent exercised over this aging and vulnerable client, his failure to honestly account for the gifts and loans he made from her assets, and by the fact that all would have gone undetected without the philanthropy of Shattuck's friends.

The panel recommended that respondent be suspended from the practice of law for one year.  The board adopted the panel's findings and its recommendation.

Deborah Delong and Charles S. Kamine, for relator.
James N. Perry, for respondent.

Per Curiam.  After careful review of the record, we agree that respondent violated DR 1-102(A)(4), 1-102(A)(6), 5-101(A), and 5-104(A).  However, we find respondent's misconduct more like that committed in Disciplinary Counsel v. Slavens (1992), 63 Ohio St.3d 162, 586 N.E.2d 92, where we imposed an indefinite suspension, than the misconduct committed in Mahoning Bar Assn. v. Theofilos, supra, where we imposed only a one-year suspension.  Respondent is, therefore, suspended from the practice of law in Ohio for two years, but one year of this period will be suspended due to the mitigating factors identified in the panel's report.  Costs taxed to respondent.

Judgment accordingly.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.