OPINION
Plaintiff-appellant, Jon Hawkins, appeals a decision of the Butler County Court of Common Pleas in a declaratory judgment action finding that defendant-appellee, Progressive Max Insurance Co. ("Progressive"), is not obligated to defend, indemnify, or otherwise provide insurance coverage for appellant.[1] For the reasons that follow, we affirm the trial court's decision.
On May 9, 1998, appellant was involved in a motor vehicle accident while driving a Toyota Tercel owned by Nina Roark. At the time of the accident, appellant was a listed driver under an automobile policy issued to Roger Miniard by Progressive. Appellant also qualified as a relative under the terms of the insurance policy because he was a person who resided with Miniard and was related to him by marriage. Under the insurance policy appellant was provided liability coverage for his use of a nonowned vehicle if his use of the vehicle was with the express or implied permission of the vehicle's owner.
The only issue of controversy before the trial court was whether appellant's use of the Toyota Tercel at the time of the accident was with Nina's express or implied permission. A bench trial was held on the matter, which revealed the following evidence:
Tara Hawkins (f.k.a. Roark) testified that since the time of the accident, she has married appellant. Tara testified that her car was "out of order" at the time of the accident and that she had received permission from her mother, Nina, to drive the Tercel to work. Tara testified that she was driving the Tercel on a regular basis. She also testified that appellant had driven the Tercel before and that she was "pretty sure" that her mother knew about this.
Tara testified that on the day of the accident she became ill. She explained that she suffers from epilepsy and that when she becomes sick, eating usually makes her feel better. Therefore, Tara and appellant decided to go to Penn Station to eat. Tara testified that it was not safe for her to operate a vehicle when she feels sick because she could have a seizure at any time. She testified that the Tercel was the only vehicle available at the time.
On cross-examination, counsel pointed out several inconsistencies between Tara's testimony at trial and prior statements she made to a Progressive representative in a recorded conversation about the accident. Specifically, Tara admitted that she had not mentioned to the Progressive representative anything about her own car being in a state of disrepair or her sickness that made her unable to drive. Moreover, Tara admitted that she told the Progressive representative that she did not know how appellant had ended up driving the Tercel. Tara also acknowledged that when the Progressive representative asked her why appellant thought he could drive the car, she answered, "I have no idea."
Appellant testified that prior to the accident, Tara had been driving the Tercel to work. He testified that on the day in question, Tara "started to get the shakes and said that she needed to get something to eat, that she was gonna have one of her spells." Appellant testified that he assumed he could drive the Tercel because Tara was in no condition to drive.
Nina also testified. She explained that she had given Tara permission to drive the Tercel because Tara's vehicle was being repaired. Nina testified that she did not talk to Tara about whether anyone else would be driving the Tercel. Nina testified that she did not talk to appellant about driving the Tercel. Nina testified that her daughter has epilepsy and a low blood sugar condition that can cause her to become dizzy or lose consciousness if she does not eat regularly. Nina testified that had she known that appellant was driving the Tercel that day, she would not have had any objections.
Nina admitted that her trial testimony was inconsistent with prior statements she made to a Progressive representative about the accident. When asked why her testimony had changed, Nina explained:
 Because at the time I was worried because I didn't have insurance on the car, that it would come back on me. And the fact is I didn't want to get into any trouble for letting Tara use the car. But Tara did have permission to use the car. So, I honestly don't know what I might have said to that man, because I didn't want to get into any trouble. I had just lost my mother, I had just had a divorce and I honestly don't know what I said to the man. But I do know that I remember I did not want to be in trouble myself for [appellant] driving the car. But Tara had permission to drive the car.
 On cross-examination, counsel for Progressive impeached Nina using the transcript of her recorded conversation with a Progressive representative about the accident. Nina testified that she had lied when she told the Progressive representative that no one had permission to drive the Tercel at the time of the accident. Nina admitted that she told the Progressive representative that appellant was specifically told not to drive the Tercel. Counsel pointed out that Nina said nothing to the Progressive representative about Tara's medical condition or about the fact that her daughter's car was under repair at the time of the accident. In fact, counsel observed that when the Progressive representative asked Nina why appellant was driving the Tercel, Nina replied, "I have no idea. * * * You know, [appellant] really didn't have a lot to say about it. I didn't even get an I'm sorry. He just acted like it was alright [sic] and you know it's ridiculous. He's a young man and not a child."
Finally counsel asked Nina whether she had lied in her deposition when she characterized the demeanor of the Progressive representative as rude. Nina testified that the Progressive representative was, in fact, rude and that this provoked her to hang up on him. Counsel asked permission to play the tape of the phone conversation for the purposes of impeachment. Appellant's counsel did not object to playing the tape for the limited purposes of impeachment and for listening to the demeanor of the Progressive representative. However, appellant's counsel argued that the entire statement should not be admitted for the truth therein. At this point, the trial court stated, "The court is well able to not take it for the truth when it's asserted there and accept it for what it's worth. For it's only for purposes of impeachment."
Jeffrey May, a claims attorney with Progressive, also testified. May identified defendant's exhibit A as the transcript of the recorded statement of the conversation between Tara and a Progressive representative. Defendant's exhibit B was identified as the transcript of a recorded statement of the conversation between Nina and a Progressive representative. Defendant's exhibit C was identified as a copy of the tape of the conversation between Nina and a Progressive representative. May testified that these statements were taken in the routine course of Progressive's investigation.
At the end of the trial, counsel for Progressive offered defendant's exhibits A, B, and C into evidence. Appellant objected, arguing that these statements were hearsay and were not admissible under any of the exceptions to the hearsay rule. Appellant argued that although these statements were used for the purposes of cross-examination, they should not be offered for the substantive truth of the information contained therein. The trial court stated that the exhibits would be admitted only for the purposes of impeachment, stating that "substantively, the court will not rely on what's contained therein."
At the conclusion of the trial, the trial court rendered its decision, finding that appellant did not have Nina's express or implied permission to operate her vehicle at the time of the accident and that appellant was not entitled to defense or coverage under the Progressive policy for claims against him. Appellant filed this appeal, raising two assignments of error for our review.
Assignment of Error No. 1:
 THE COURT ERRED IN ADMITTING INTO EVIDENCE THE STATEMENTS OF WITNESSES GIVEN TO AN INSURANCE ADJUSTER.
In his first assignment of error, appellant argues that the trial court erred by admitting prior out-of-court statements made by Tara and Nina and using this extrinsic evidence to prove the truth of matters asserted therein.
"A trial court has broad discretion in determining whether to admit or exclude evidence. Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand." Krischbaumv. Dillon (1991), 58 Ohio St.3d 58, 66.
Evid.R. 613, which provides for impeachment by self-contradiction states:
 (A) Examining witness concerning prior statement. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.
 (B) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
 (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
 (2) The subject matter of the statement is one of the following:
 (a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
 (b) A fact that may be shown by extrinsic evidence under Evid. R. 608(A), 609, 616(B) or 706;
 (c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.
 (C) Prior inconsistent conduct. During examination of a witness, conduct of the witness inconsistent with the witness's testimony may be shown to impeach. If offered for the sole purpose of impeaching the witness's testimony, extrinsic evidence of that prior inconsistent conduct is admissible under the same circumstances as provided for prior inconsistent statements in Evid. R. 613(B)(2). (Emphasis sic.)
As stated above, the trial court assured appellant's counsel that defendant's exhibits A, B, and C would be admitted for purposes of impeachment and not for the truth of the statements contained therein. However, in it twelfth finding of fact, the trial court stated, "Based upon the prior statements made to the insurance adjuster for Defendant, Progressive [sic] the Court finds, [sic] that Nina Roark had advised Mr. Hawkins that he was not permitted to operate her automobile." It is clear that the trial court relied upon the transcript for substance and not merely for impeachment purposes, despite the court's assurances to the contrary.
In its conclusions of law, the trial court stated:
 (1) Mr. Hawkins has the burden to prove that he had the express or implied permission of Nina Roark to use her vehicle to qualify for liability coverage under Progressive's policy for the accident which occurred on May 9, 1998[.]
 (2) Based upon the Findings of Fact the Court finds that Plaintiff did not have the express or implied permission of Nina Roark to operate her automobile at the time of the subject accident and is not entitled to a defense or coverage under the Progressive policy for any claims against him.
It was improper for the trial court to assure appellant on the record that it would not consider the defense exhibits for the substantive truth of the matter contained therein and then rely upon these statements in making a finding of fact and conclusion of law. Therefore, the twelfth finding of fact, which relies upon Nina's statement to the Progressive representative, was improperly made.[2]
Nevertheless, even if we strike the twelfth finding of fact as improperly made by the trial court, the remaining findings of fact still support the trial court's legal conclusion that appellant is not entitled to a defense or other coverage under the Progressive policy. Nina testified that she never gave appellant explicit permission to drive the Tercel. Thus, the remaining question was whether appellant was given implicit permission to drive the Tercel. In this regard, appellant argues that Nina had already given Tara permission to drive the Tercel, and that when Tara became sick and unable to drive, appellant had Nina's implicit permission to drive her car so as to obtain food for her daughter. However, in its eleventh finding of fact, the trial court states, "The Court finds that much of the testimony provided by Tara Roark and Mr. Hawkins was not credible, in particular, the testimony that related to a medical emergency condition supposedly suffered by Tara Roark which necessitated that Mr. Hawkins operate the vehicle at the time of the accident." In this finding of fact the trial court makes a credibility determination. Therefore, if the trial court relied upon the admitted exhibits in arriving at this finding of fact, it used such statements as impeachment rather than relying upon them to make a substantive finding of the truth of the matters contained therein.
The eleventh finding of fact indicates that the trial court disbelieved the story upon which appellant's implicit authorization argument was based. Therefore, even if the trial court's finding of fact stating that Nina expressly advised appellant that he was not allowed to use the Tercel is stricken, the trial court's conclusion that appellant did not have the express or implied permission of Nina still stands.
Because appellant has failed to demonstrate that the trial court's consideration of defendant's exhibits resulted in material prejudice, we do not find reversible error. See Dillon, 58 Ohio St.3d at 66. The first assignment of error is overruled.
Assignment of Error No. 2:
 THE JUDGMENT IN FAVOR OF APPELLEE, PRUDENTIAL INSURANCE CO. WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his second assignment of error, appellant insists that the trial court's judgment was against the manifest weight of the evidence.
In reviewing the decision of the trial court, we are guided by the principle that judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. Shemo v. Mayfield Heights
(2000), 88 Ohio St.3d 7, 8-9, citing C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus. If the evidence is susceptible to more than one interpretation, we must interpret it consistently with the judgment of the trial court. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
Upon careful review of the record, we conclude that the trial court's judgment is supported by the manifest weight of the evidence. The credibility of the witnesses at trial was properly impeached during cross-examination and appellant ultimately failed to show that he received Nina's explicit or implied permission to drive the Tercel. Therefore, the trial court's judgment that appellant was not covered by the Progressive policy was proper.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] There are other defendants in this case in addition to Progressive who are not parties to this appeal.
[2] The exhibits might have been admissible under Evid.R. 613 in conjunction with Evid.R. 803(6), records of regularly conducted activity. However, this argument was not made by the parties on appeal. Moreover, as we will further explain, the trial court did not need to rely upon the truth of the matter contained within these exhibits in order to conclude that Progressive has no duty to defend or otherwise insure appellant.