OPINION
{¶ 1} Defendant-appellant, Richard Cochrane, was indicted on five counts, including aggravated murder, murder, aggravated robbery, receiving stolen property and tampering with evidence. A nolle prosequi was entered as to Counts 4 and 5, receiving stolen property and tampering with evidence. After a jury trial, appellant was found guilty of murder. He was sentenced to 15 years to life imprisonment
{¶ 2} Appellant filed a notice of appeal and raises the following assignments of error:
{¶ 3} "1. Richard Cochrane's conviction was based upon insufficient evidence.
{¶ 4} "2. Richard Cochrane's conviction was against the manifest weight of the evidence.
{¶ 5} "3. Prosecutorial misconduct during the discovery period and up to the day of trial was improper and prejudicial depriving Richard Cochrane of his right to a fair trial, pursuant to Section 16, ArticleOne of the Ohio Constitution and the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States.
{¶ 6} "4. The trial court abused its discretion when it admitted over defense counsel's objection evidence of videotaped recording of interviews which the prosecutor had failed to provide to defense counsel prior to the trial."
{¶ 7} The charges against appellant arose from the stabbing death of Heather Stambaugh on March 1, 2002. The first witness to testify at trial was Mark Beall, who was a friend of the victim, Heather Stambaugh, and owned the trailer where Heather lived. Beall testified that Heather was a drug abuser and had used crack cocaine for approximately the last year of her life. She had called Beall on March 1, 2000, and asked him to pick her up and give her a ride, but when he arrived at the location she had given him he could not find her. The next day after work, he went directly to her trailer in an attempt to find her. He found her dead on the floor of the trailer. The coroner testified that she had been stabbed 13 times and two of the wounds were fatal.
{¶ 8} Melvin Fields, an inmate who had been incarcerated for the last 18 months for a parole violation, testified for the state. He was also facing charges related to Heather's death. While incarcerated, he was in the Medical Correctional Institute for tuberculosis and believed he was dying so he contacted the homicide detectives in July 2000 to relate the information he had relating to Heather's death. He wanted the homicide detectives to talk to his probation officer so he could be placed in a halfway house.
{¶ 9} Fields testified that he went to Motel One at approximately 1:00 or 2:00 p.m. on March 1, 2000, and was drinking and ingesting drugs. Appellant arrived with Heather and later appellant took him to a storage shed to retrieve a television which they took to a pawn shop. After buying some beer, appellant and Fields returned to Motel One to pick up another female before going to Town Country Shopping Center where Fields stole some clothes and sold them. They went back to Motel One and Fields smoked some dope and had sex with Heather. Appellant came in the room and was angry with Heather but then left. Fields and Heather got high again and then went to Heather's trailer around 8:30 or 9:00 p.m. They got high again and had sex when appellant arrived, and appellant and Heather started arguing. Heather picked up a bar stool and hit appellant, and appellant pulled a knife out of his pants pocket and started stabbing Heather. Fields grabbed his and Heather's clothing and ran. He threw her pants over a fence at the rear of the trailer park because he was worried that his semen was on the pants from when they had had sex at the motel. Eventually appellant drove up in his pickup truck and Fields got in the truck because he was afraid of appellant. Appellant had a television and a walkman from Heather's trailer in the truck. Appellant sold the television to a man on the street, threw the knife and his flannel shirt in a dumpster, purchased some crack cocaine, went to Greenbriar apartments and sold the walkman. Fields testified that appellant threatened to hurt him and his family if he talked about what happened. Fields admitted he was only looking out for himself when he ran from the trailer and made no attempt to come to Heather's aid or seek help for her.
{¶ 10} Sheila Williamson, who lived across the street from Heather, also testified. She stated that, on March 1, 2000, she had worked a 12-hour shift and arrived home at approximately 8:00 p.m. She heard a male and a female voice arguing inside Heather's trailer. She also saw a truck parked in Heather's driveway and testified she had seen it before.
{¶ 11} Donita Bice, Williamson's daughter, also testified. She stated that she was outside talking on the telephone for approximately one to one and one-half hours. She saw a blue pickup truck in Heather's driveway and identified it from pictures as appellant's truck. Bice saw a man leaving Heather's trailer wearing a flannel shirt and blue jeans. He looked frantic, put something inside the passenger side of the truck, then started to drive away. He stopped and told her she should not be outside and then sped away.
{¶ 12} The last witness to testify for the prosecution was Ruby Wallace. She was in jail for forgery and receiving stolen property. She had been Heather's friend. Wallace testified that, soon after she learned that Heather had been killed, she saw appellant driving by her house and she flagged him down in order to borrow a stem to smoke crack cocaine. Appellant entered her house and told her: "The bitch got what she deserved." (Tr. Vol. II, at 162.) He also stated that: "I got tired of the bitch running off with my money." (Tr. Vol. II, at 163.) When Wallace asked him what he meant, he admitted that: "Well, she run off with $40 of mine, and I stabbed the bitch." (Tr. Vol. II, at 163.) Wallace told him to leave her house. She borrowed her daughter's car to pick up her boyfriend and go to the police, but was stopped by the police on the way.
{¶ 13} Appellant also testified and related the events of March 1, 2000. He stated that he picked up Heather at her trailer in the morning and they went to his friend's apartment to smoke crack and drink beer. He and Heather had sex and then went to Motel One. They met Fields there and appellant noticed an attraction between Heather and Fields. Appellant admitted that he and Fields pawned his television and went to Town Country Shopping Center where Fields stole some clothing, which they sold. When they returned to the motel, appellant gave someone a ride and, when he returned, Heather and Fields were not at the motel. He went to Heather's trailer at approximately 10:00 or 11:00 p.m. He knocked on the door several times and finally Heather answered. He believed that Heather and Fields had been having sex. He had beer and a small amount of cocaine with him and he thought Heather was angry with him because the amount of cocaine was so little. Heather took a swing at him and he dropped the cocaine. Heather and Fields asked him to leave so he did. Appellant later returned, eavesdropped at the trailer window but then left again. He slept at his friend's apartment. The next afternoon he went to Heather's trailer but no one answered the door so he left. That evening he saw the news and discovered what had happened. He was later pulled over by the police and taken to police headquarters for questioning.
{¶ 14} Appellant testified that Fields and Wallace were wrong because he had nothing to do with Heather's death. During the police interrogation, appellant was alone in the interrogation room and is shown on the tape saying, "Oh God, they know." He also prayed. During cross-examination at the trial, appellant explained that he said a prayer for Heather and his sister because they had both been murdered.
{¶ 15} By the first and second assignments of error, appellant contends that his conviction was based upon insufficient evidence and was against the manifest weight of the evidence. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
{¶ 16} The test for determining whether a conviction is against the manifest weight of the evidence differs somewhat from the test as to whether there is sufficient evidence to support the conviction. With respect to manifest weight, the evidence is not construed most strongly in favor of the prosecution, but the court engages in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. See State v. Conley (1993), Franklin App. No. 93AP-387.
{¶ 17} "* * * Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's [Law Dictionary (6th Ed. 1990)] at 1594)." Thompkins, at 387.
{¶ 18} In this case, Fields testified that he saw appellant stab Heather and the coroner testified that Heather died from stab wounds. Wallace testified that appellant admitted to her that he had stabbed Heather. Bice saw appellant's truck at Heather's trailer that night and also testified that she saw a man looking frantic leave Heather's trailer wearing a flannel shirt. Fields testified that appellant threw a flannel shirt into a dumpster that evening.
{¶ 19} Although appellant denied involvement in the killing, the existence of conflicting evidence does not render the evidence insufficient as a matter of law. State v. Murphy (2001), 91 Ohio St.3d 516,543. The jury believed the state's witnesses rather than appellant. Such determinations of credibility and the weight to be given to the evidence are for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. This evidence is sufficient that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, and constitutes sufficient competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. Appellant's first and second assignments of error are not well-taken.
{¶ 20} By the third and fourth assignments of error, appellant contends that prosecutorial misconduct during the discovery period and up to the day of trial was prejudicial, deprived him of his right to a fair trial and that the trial court abused its discretion when it admitted, over defense counsel's objection, evidence of videotaped recordings of interviews which the prosecutor had failed to provide to defense counsel prior to the trial.
{¶ 21} The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. When a discovery violation occurs, a trial court has discretion in the selection of the appropriate sanction for a discovery violation. See Crim.R. 16(E)(3). When deciding whether the trial court abused its discretion, an appellate court should consider whether there was a willful violation of the discovery rules, if foreknowledge would have benefited the accused in the preparation of his or her defense and whether the accused was unfairly prejudiced. State v. Jones (Mar. 16, 1999), Franklin App. No. 98AP-544.
{¶ 22} Appellant argues that the prosecutor engaged in misconduct by failing to provide to defense counsel the videotape of appellant's interview by homicide detectives at police headquarters. Defense counsel received this tape on the Friday before trial, which started on a Monday afternoon. As part of discovery, the prosecution had provided summaries of the tapes and the trial court gave appellant and defense counsel an opportunity to watch the tapes before accepting or denying the offered plea bargain. The court offered defense counsel the opportunity for a continuance, which defense counsel denied. Defense counsel did not request copies of the tapes until one and one-half weeks before receiving the tapes.
{¶ 23} In this case, the trial court specifically found that there was no bad faith on the prosecutor's part and there was not a willful violation of the discovery rules. Defense counsel had summaries of the tapes and has not demonstrated that viewing the actual tapes would have benefited in the preparation of his defense. To the extent there was a discovery violation, appellant has not demonstrated prejudice.
{¶ 24} Appellant also objected to the tape of the police interview with Ruby Wallace. Crim.R. 16(B)(1)(g) provides that statements made by a witness, as opposed to a party, are not examined for inconsistencies until after the witness has testified. Unless the statements are exculpatory, the statements are not subject to discovery before the conclusion of the direct examination at trial. Thus, the prosecutor did not engage in misconduct regarding Wallace's videotaped interview. Also, the tape of Wallace's interview, while played for the jury, was not admitted as an exhibit at trial and is not part of the record on appeal. The duty to provide the record for appellate review falls upon appellant because he bears the burden of demonstrating error by reference to matters in the record. Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199. In Columbus v. Hodge (1987), 37 Ohio App.3d 68,68-69, this court stated, as follows:
{¶ 25} "* * * When portions of the transcript necessary for resolution of assigned errors are omitted from the record, we have nothing to pass upon and, thus, we have no choice but to presume the validity of the lower court's proceedings and affirm. * * * In addition, in the absence of all relevant evidence, a reviewing court must indulge the presumption of regularity of the proceedings and the validity of the judgment of the trial court. It is the appellant's responsibility to include all the evidence in the appellate record so that the claimed error is demonstrated to the reviewing court. * * *"
{¶ 26} In this case, the tape is not in the record and appellant has not demonstrated the prejudice he suffered. We presume the regularity and validity of the trial court proceedings and judgment.
{¶ 27} The trial court has broad discretion in the admission or exclusion of evidence and, in the absence of an abuse of discretion which results in material prejudice to a defendant, an appellate court should be slow to reverse evidentiary rulings. Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 66. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Appellant's third and fourth assignments of error are not well-taken.
{¶ 28} For the foregoing reasons, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK, P.J., and KLATT, J., concur.