[Cite as *Weller v. Price*, 2020-Ohio-2735.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Kelley Weller, Individually, as Guardian of Georgia and Sophia Weller, and as Administratrix of the Estate of Charles C. Weller, Deceased,

      Plaintiff-Appellant,

v.

Brandie M. Price, as the Executor of the Estate of Phillip D. Price, M.D., et al.,

      Defendants-Appellees.

:
:
:
:
:
:
:
:
:
:

No. 18AP-264
(C.P.C. No. 14CV-11088)

(REGULAR CALENDAR)

NUNC PRO TUNC[1]
DECISION

Rendered on April 30, 2020

**On brief:** *Ansa Assuncao LLP, James H. Gordon,* and *Jeremy R. Kopp*, for appellant. **Argued:** *James H. Gordon.*

**On brief:** *Arnold, Todaro & Welch Co., L.P.A.,* and *Grier D. Schaffer*, for appellee Mount Carmel Health System, Inc. **Argued:** *Grier D. Schaffer.*

**On brief:** *Poling Law,* and *Frederick A. Sewards*, for appellees Central Ohio Surgical Associates, Inc. and Brandie M. Price. **Argued:** *Frederick A. Sewards.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant Kelley Weller appeals from the decision of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee Mount

---

[1] This decision replaces, nunc pro tunc, the original decision released on April 30, 2020, and is effective as of that date. This decision corrects the reference to a party in the concurrence.

No. 18AP-264

Carmel Health System, Inc. d.b.a. Mount Carmel West Hospital ("Mount Carmel"), and denying her motions for judgment notwithstanding the verdict and for a new trial following a jury verdict in favor of defendants-appellees Dr. Phillip Price and Dr. Price's surgical practice, Central Ohio Surgical Associates, Inc. (collectively, "COSA defendants"). Plaintiff asserts three assignments of error for review:

> [1.] The trial court abused its discretion and materially prejudiced Ms. Weller when it precluded Ms. Weller from introducing in her case in chief and in her rebuttal case COSA's interrogatory answers regarding injury causation.
>
> [2.] The trial court abused its discretion and materially prejudiced Ms. Weller by allowing Dr. Dean Mikami and Dr. William Schirmer to testify at trial.
>
> [3.] The trial court erred when it granted Mount Carmel's Second Motion for Summary Judgment.

After a change of judge on the court, the case was assigned to this authoring judge on March 6, 2019. Upon consideration, we overrule plaintiff's first and second assignments of error, render moot plaintiff's third assignment of error, and affirm the trial court.

{¶ 2} In August 2013, plaintiff's husband and decedent Charles C. Weller met with Dr. Price for a lower-right side umbilical hernia evaluation, at Price's office on Mount Carmel's medical campus. After evaluation, Dr. Price determined Charles was an appropriate candidate for a laparoscopic hernia repair, even though Charles had an elevated risk of surgical complications because he had high blood pressure, a history of pulmonary embolisms, was on chronic pain medication, and weighed nearly 600 pounds.

{¶ 3} On October 8, 2013, at Mount Carmel West Hospital, Dr. Price performed a laparoscopic surgery on Charles and inserted a mesh to repair the umbilical hernia. Charles was released from the hospital that evening.

{¶ 4} On October 23, 2013, Charles saw Dr. Price for a scheduled follow-up appointment. At that time, Charles complained of several issues, including fever, chills, a pain in his lower right side like a pulled muscle, dry heaving, loss of appetite, and fatigue. He had normal blood pressure, but a mildly elevated heart rate. Dr. Price examined Charles, noted that he had a pocket of fluid known as a seroma near his surgical site, and aspirated 20ccs of the fluid. Dr. Price scheduled Charles for another follow-up appointment approximately two weeks later.

No. 18AP-264

{¶ 5} The following day, October 24, 2013, Charles visited his longtime primary care physician, Dr. Trieu Hua, for the same symptoms but, in addition, he reported coughing, vomiting after coughing, and frequent urination. Charles also told Dr. Hua that his surgeon had indicated he may have an abdominal strain. Dr. Hua observed Charles' abdominal incisions were "clean and dry," and noted that while Charles did not have "rebound pain," Charles did have "some tenderness" when Dr. Hua pressed on his abdomen. (Tr. Vol. I at 198.) Based on these symptoms, Dr. Hua described Charles as "acutely ill" and concluded Charles had "some form of infection," possibly pneumonia, which he stated was "a common complication for post-op." (Hua Depo. at 10, 12-13.) Dr. Hua prescribed the antibiotic Levaquin and advised Charles that if his condition got worse, he should call or go to the emergency room. However, Charles was unable to fill the prescription that evening because the pharmacy had closed.

{¶ 6} That night, Charles had great difficulty breathing and his wife called 911. Charles was transported by ambulance to Licking Memorial Hospital where blood work was performed. That testing revealed Charles' kidneys were failing, and that he was fighting a massive infection. Charles was then transported back to Mount Carmel West Hospital where Dr. Price performed emergency surgery. That surgery revealed a serious necrotizing soft tissue infection in the area where the seroma fluid was after the hernia repair, and the dead and infected tissue was removed. Charles was kept sedated and intubated in the intensive care unit for the next three days and was eventually placed into a medically induced coma, but his condition did not improve. On October 28, 2013, Charles died from complications of septic shock with multiple organ dysfunction.

{¶ 7} On October 28, 2014, plaintiff filed a complaint against Dr. Price,[2] COSA, and Mount Carmel, asserting claims for medical negligence, wrongful death, respondeat superior, and negligent hiring/supervision. On December 21, 2016, Mount Carmel filed a motion for summary judgment arguing it had no direct liability for any acts or omissions by Dr. Price that harmed Charles, and that Mount Carmel had no legal relationship with Dr. Price that would cause it to be vicariously liable for his acts or omissions. On February 1, 2017, the trial court held that "Dr. Price was not an employee of Mount Carmel"

---

[2] While the action was pending, Dr. Price died. Brandie M. Price was substituted as defendant, as she is the executor of his estate.

No. 18AP-264

but that he was instead "an independent medical staff physician" who had a preexisting relationship with Charles Weller, and that because Charles had "looked to Dr. Price rather than Mount Carmel" for treatment, Mount Carmel was "merely a situs" for the surgery. (Feb. 1, 2017 Decision at 6.) In accordance with these findings, the trial court granted "summary judgment to Mount Carmel on all claims against it." (Decision & Entry on Def. Mt. Carmel's Mot. for Summ. Jgmt. at 6.)

{¶ 8} As discovery proceeded against the COSA defendants, two contentious issues emerged one of which first centered around two of the COSA defendants' expert witnesses, Drs. William Schirmer and Dean Mikami. For reasons disputed in the record, plaintiff did not depose these experts within the normal time frame for discovery—the COSA defendants asserted this was a strategic choice, but plaintiff argued the COSA defendants' witness disclosure was vague, did not comply with the local rules, and did not clearly assert that these witnesses would be offering testimony regarding whether Dr. Price had met the required standard of care. The trial court denied a motion by the plaintiff to depose Drs. Schirmer and Mikami after the discovery cutoff had passed. Notwithstanding, plaintiff strongly objected to expert testimony by Drs. Schirmer and Mikami at multiple points prior to trial, filed two unsuccessful motions in limine requesting the court to preclude them from testifying, and objected to their testimony at trial.

{¶ 9} The second dispute centered around two interrogatory responses by the COSA defendants. Plaintiff sought to substantively rely on those responses in her case-in-chief, as COSA's representative had made statements that Charles "complained of fever and chills 3-4 days prior to going to an outside hospital emergency room," and that "the patient was given instructions to call immediately for fever and chills and he waited 3-4 days before seeking care." (Exh. A, Pl. Opp. at 6-7.) Plaintiff interpreted these responses as non-hearsay admissions that the COSA defendants were aware Charles had symptoms requiring medical attention for at least 3 days prior to his admission to the hospital on October 25, 2013—including on October 23, 2013, the date of his follow-up visit with Dr. Price.

> [Mr. GORDON]: So the defendants are now apparently going to argue what I think--they're going to suggest that on the one hand, Dr. Price should not have suspected an infection on October 23, 2013. And on the other hand, Chuck Weller, because he began experiencing fever and chills on October 22nd, the day before he saw Dr. Price somehow delayed his care

and therefore contributed to his death. So, obviously, this is relevant information. There is absolutely no hearsay objection that could be made to this. It's an admission by a party opponent. This is COSA's own words.

* * * So we would move exhibits -- I'm sorry, not exhibits, interrogatories and answers 10 and 11 into evidence, seek to move those into evidence.

* * * All we want to do is we want to present these in closing argument to the jury on the screen. And I can redact everything else; but I want to talk about 10 and 11. They're isolated interrogatories and the jury needs to hear them.

(Tr. Vol. III at 480-81.)  In response, the COSA defendants argued that the interrogatory answers were unsworn, had not been used in cross-examination, and had not been previously filed as evidence with the court.  The plaintiff responded that "[i]t's not hearsay. It's relevant.  It's authentic.  And unless [COSA's defense counsel] can say it is hearsay, and he can't, or that it's not what I'm saying it is, which he can't, or that it's not relevant, which it is, then it does come in."  *Id.* at 496-97.  Ultimately, the trial court concluded the interrogatory was not properly authenticated because it was unsworn, and because the representative of COSA who had completed the interrogatories was not a witness in the case.  Further, the court ruled that the answers were admissible to impeach only if a proper foundation was laid:

What I think would be improper would be, are you aware that Central Ohio Surgical Associates provided an interrogatory response that indicated that Mr. Weller was morbidly obese with a history of DVT, et cetera, et cetera, and then for them to say no. And then you get the next witness, okay, are you aware of an interrogatory, again, where Central Ohio Surgical Associates indicated, and then the answer is no.

That's why I say what you have to do is ask them if they are even familiar with this interrogatory.  If they're not familiar with the interrogatory, you can ask them questions in general, I guess, whether they are aware as to -- whether Mr. Weller is at fault somehow if that is part of their opinion. And they can answer yes or no at that point in time.

But, I think, really where we are at is I'm going to have to hear what the witness is testifying to. I'm going to have to listen to

No. 18AP-264

> the question that's being asked and make a decision at that
> point as to whether the question is proper.

*Id.* at 508. Following the testimony of the COSA defendants' experts, plaintiff argued their testimony was "there is no negligence and there is no causative negligence" and that the interrogatory answers belied that testimony. (Tr. Vol. V at 865.) Plaintiff therefore sought to admit the interrogatory answers in her rebuttal case, but the court denied the motion and again held that "the interrogatories are reaching an expert opinion as to the cause of death and there would need to be some sort of foundation laid in order to get that information before the jury." *Id.* at 877.

{¶ 10} At trial, plaintiff's expert Dr. Brad Case testified while he believed Dr. Price's preoperative evaluation of Charles and his determination Charles was a viable candidate for hernia repair met a reasonable standard of care, his treatment of Charles at the post-operative visit on October 23, 2013 did not. According to Dr. Case, Charles' loss of appetite, chills, dry heaves, low-grade fever, fatigue, and lower-right quadrant pain should have caused Dr. Price to have a "clinical suspicion" that the surgery had resulted in complications, particularly an infection. (Tr. Vol. II at 271.) Dr. Case opined that "at the minimum" these symptoms should have caused Dr. Price to have sent Charles for basic lab work, because "that would have given [Dr. Price] a clue that something was going sideways." *Id.* at 280. Dr. Case also stated he was "perplexed" Dr. Price had drained fluid from Charles' seroma, since that creates the possibility of "introducing an infection where there wasn't one" and the only reason to aspirate fluid would be to have it analyzed, and that "wasn't done in this case. It was aspirated and disposed of." *Id.* at 288. According to Dr. Case, early detection by lab analysis and subsequent surgery is the only way to save the life of a patient developing necrotizing fasciitis, like Charles Weller. *Id.* at 281. After analyzing all of Charles' symptoms and Dr. Price's response, Dr. Case testified there was a reasonable degree of medical certainty that if Dr. Price had ordered basic testing, he would have discovered the infection at an earlier stage and would have been able to save Charles' life. On cross-examination, Dr. Case admitted that a reasonably well educated, trained, and experienced expert witness in general surgery could disagree with his view of Dr. Price's post-operative care of Charles Weller.

{¶ 11} In their defense case, the COSA defendants presented the testimony of several experts who directly disagreed with Dr. Case. Dr. Keith Armitage, a specialist who

frequently consulted with surgeons treating patients with serious infections, concluded that Charles' medical records contained no signs of abdominal surgical wound infection until he arrived at Mount Carmel, days after his post-operative visit with Dr. Price. Dr. Schirmer, a general surgeon who focused on abdominal surgery and surgical infections and who had performed several thousand hernia surgeries, concluded it was "really quite speculative" to suggest Charles' infection had begun prior to his follow-up visit with Dr. Price, that there was no additional action Dr. Price could have taken at that time "that was required by the standard of care," that Dr. Price's care of Charles was "well within accepted standards," and that there "is nothing Dr. Price did or failed to do that cause this infection or the result." (Tr. Vol. IV at 807-08, 817-18.) Similarly, Dr. Mikami, a certified general surgeon with a focus in bariatric surgery, who is the chief of general surgery and director of the hernia program at the University of Hawaii, and who previously designed and chaired the Hernia Center at the Ohio State University Wexner Medical Center, concluded that Dr. Price's medical care both during Charles' operation and during the post-operative visit were within the standard of care, and his care was not the cause of Charles' death.

{¶ 12} At the conclusion of the trial, the jury found that Dr. Price was negligent, and that his "documentation and assessment of post-op visit does not meet the standard of reasonable care based on the level of risk of a super-morbidly obese patient." (Jury Interrog. No. 2) But the jury also concluded that this negligence was not the proximate cause of Charles' death. Plaintiff then filed a combined motion for judgment notwithstanding the verdict and for a new trial on damages, arguing that the trial court erred by allowing Drs. Mikami and Schirmer to testify despite the COSA defendants' failure to comply with the disclosure requirements of FCCP Loc.R. 43.03(c), and by precluding the plaintiff from introducing the COSA defendants' answers to interrogatories 10 and 11 in her case-in-chief and precluding her from cross-examining defendants' experts using the interrogatory answers. The trial court denied the combined motion on March 23, 2018, and this appeal followed.

{¶ 13} Plaintiff's first two assignments of error both address the trial court's decision on her combined motion for judgment notwithstanding the verdict under Civ.R. 50(B), and for new trial on damages under Civ.R. 59(A)(4) and (6). Our standard of review for reviewing rulings under those rules are related, but differ in certain respects:

No. 18AP-264

> A Civ.R. 50(B) motion for JNOV "is used to determine only one issue: whether the evidence is totally insufficient to support the verdict." Neither the weight of the evidence nor the credibility of the witnesses is a proper consideration for the court. If there is evidence to support the non-moving party's side so that reasonable minds could reach different conclusions, the court may not usurp the jury's function and the motion must be denied.

> A motion for JNOV does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence.

(Citations omitted.) *Jeffrey v. Marietta Mem. Hosp.*, 10th Dist. No. 11AP-492, 2013-Ohio-1055, ¶ 23-24.. "The evidence 'must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied.' A favorable ruling on such a motion is not easily obtained." *Smith v. Superior Prods., LLC*, 10th Dist. No. 13AP-690, 2014-Ohio-1961, ¶ 11, quoting *Osler v. Lorain*, 28 Ohio St.3d 345, 347 (1986). Because a Civ.R. 50(B) motion presents a question of law, our review of the trial court's judgment on the motion is de novo. *Jeffrey* at ¶ 24, citing *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3822, ¶ 23.

{¶ 14} By contrast, we review the court's decision to deny plaintiff's alternative motion for new trial for an abuse of discretion. *Smith* at ¶ 58.

> * * * A motion for a new trial, pursuant to Civ.R. 59(A)(6), tests whether the judgment is sustained by the weight of the evidence. A judgment is not against the manifest weight of the evidence if there is competent, credible evidence going to all the essential elements of the case. When presented with a Civ.R. 59 motion, the trial court is afforded wide discretion in determining whether the jury's verdict is against the manifest weight of the evidence.

(Citations omitted.) *Jeffrey*, 2013-Ohio-1055 at ¶ 25, citing *C.E. Morris v. Foley Constr. Co.*, 54 Ohio St.2d 279, syllabus (1978). An abuse of discretion occurs where a trial court's attitude is unreasonable, arbitrary or unconscionable. *Smith* at ¶ 58, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

No. 18AP-264

## I. Assignment of Error One: Exclusion of COSA'S Interrogatory Responses

{¶ 15} In her first assignment of error, plaintiff argues the trial court erred when it precluded her from introducing COSA's interrogatory responses at trial. As stated above, plaintiff sought to substantively rely upon the statements that "[Charles] complained of fever and chills 3-4 days prior to going to an outside hospital emergency room" and "[Charles] was given instructions to call immediately for fever and chills and...waited 3-4 days before seeking care" in both her case-in-chief as well as in her rebuttal case, as she viewed those statements as de facto admissions of Dr. Price's negligence and causation for Charles' post-surgical complications. (Pl. Jury Interrogs. At Nos. 10-11.) Plaintiff also sought to impeach COSA's expert witnesses with the responses.

{¶ 16} In ruling on her motion for judgment notwithstanding the verdict, the trial court concluded:

> [E]xclusion of COSA's interrogatory responses was not unreasonable, arbitrary, or unconscionable. COSA's interrogatory responses were not admissible at trial because they were not signed or sworn to by any COSA employee. Assuming COSA violated Civ.R. 33(A) by submitting interrogatory responses that were not made under oath, Plaintiff could and should have filed a Motion to Compel appropriate responses under Civ.R. 37. * * *

> Also, even if the Court were to ignore the fact that the responses were unsigned and unsworn, Interrogatory Numbers 10 and 11 could not be used as a judicial admission for the purpose of impeaching Defendants' expert witnesses because COSA, not its experts, answered the interrogatories.

(Mar. 23, 2018 Decision at 15.)

{¶ 17} We agree with the trial court. "Civ.R. 33(A) mandates that answers to interrogatories be signed, sworn to and served upon the party submitting them. * * *The use of [an unsigned, unsworn, and unserved interrogatory] in determining the merits of a claim is erroneous." *Allstate Ins. Co. v. Rule*, 64 Ohio St.2d 67, 70 (1980) (interpreting former version of rule). Plaintiff did not ask the COSA defendants to sign the interrogatory responses, there is no indication in the record the COSA defendants would have refused to verify the responses if they had been requested to do so during discovery, and even if the COSA defendants had refused, plaintiff could have sought, and would likely have received, an order compelling proper interrogatory responses. *See generally* Civ.R. 37(A)(3)(iii).

Plaintiff vociferously argues the interrogatory responses were relevant non-hearsay admissions, and the trial court materially prejudiced her by blocking her attempts to admit them. But as the COSA defendants argue, and the trial court correctly observed, the COSA employee who answered the interrogatories was not a physician. She was not competent to offer an opinion whether Charles needed further medical care on the date of his follow-up appointment, was not involved with the appointment in any way, and—perhaps most notably—was not deposed or called as a witness by the plaintiff to clarify her statements. Even if plaintiff's arguments regarding relevancy and hearsay are accepted, and the lack of authentication is overlooked, the evidence may well have been subject to exclusion under Evid.R. 403(A). "The admission or exclusion of evidence is a matter which is solely within the discretion of the trial court, and because the trial judge is in a significantly better position to determine whether testimony is relevant or irrelevant, a trial court's decision will be reversed only upon a showing of an abuse of discretion." *Robertson v. Mt. Carmel East Hosp.*, 10th Dist. No. 09AP-931, 2011-Ohio-2043, ¶ 27, citing, *e.g.*, *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66 (1991). We cannot say the trial court's decision to exclude unauthenticated statements of dubious value by a witness lacking the competency to make them is an abuse of its wide discretion regarding the admission of evidence. Accordingly, we overrule plaintiff's first assignment of error.

## II. Assignment of Error Two: Permitting Defense Experts to Testify

{¶ 18} In her second assignment of error, plaintiff argues the trial court should have excluded COSA defendants' experts from testifying because COSA's disclosure of expert witnesses failed to comply with Loc.R. 43.03 of the Franklin County Court of Common Pleas, General Division. The rule states a party's disclosure of expert witnesses is to include "[a] brief description of the expert's qualifications and summary of the expert's opinions and the basis or theory of that opinion." Loc.R. 43.03(c) Loc.R. 43.04 provides that "[a]ny witnesses not disclosed in compliance with this rule may not be called to testify at trial, unless the Trial Judge orders otherwise for good cause and subject to such conditions as justice requires." As observed above, plaintiff filed motions in limine to preclude the testimony of two of the COSA defendants' expert witnesses, Drs. Schirmer and Mikami, which argued the COSA defendants had violated Loc.R. 43.03(c). Plaintiff reiterated this same objection in her combined motion for judgment notwithstanding the verdict and for new trial. Plaintiff's argument relies largely upon this court's decision in *Foster v. Sullivan*,

No. 18AP-264

10th Dist. No. 13AP-876, 2014-Ohio-2909, in which we affirmed the trial court's decision to grant summary judgment to a defendant, based in part on its decision to disregard the affidavit of an expert for the plaintiff offered in opposition to summary judgment, because that expert's identity had not been previously disclosed. *Id.* at ¶ 14-15. But we believe the plaintiff has overread *Foster*—in that case we held the trial court "was authorized under Loc.R. 43 to exclude" the affidavit, that it was not error to exclude it, and that the trial court's decision to refrain from "overlooking" the failure to disclose the witness was supported by the general dilatory course of the plaintiff's litigation in that case. *Id.* at ¶ 20-21. *Foster* does not stand for the principle that the only available course of action for a trial court for a violation of Loc.R. 43.03 is to exclude the witness; it simply approves of the trial court's decision to exclude the witness in that case.

{¶ 19} Here, we are faced with the opposite situation—rather than relying upon the rule to exclude a witness, the trial court chose to permit the witnesses to testify, and we believe the facts of *Foster* support that decision. In *Foster*, the witness was not disclosed at all; but in this case, the trial court concluded at several points during litigation that the COSA defendants had in fact *complied* with Loc.R. 43.03. In denying the plaintiff's combined motion for judgment notwithstanding the verdict and for a new trial on damages, the court held the disclosure "contains expert names, addresses, occupations, and a 'summary' of what the expert will opine about at trial. * * * Although Defendants' disclosure of experts is terse, it contains the essential information required under the rule." (Mar. 23, 2018 Decision at 8.)

{¶ 20} While it is certainly arguable the COSA defendants should have provided additional information about Drs. Schirmer and Mikami in their supplemental disclosure of witnesses, we cannot say as a matter of law the failure to provide that information violates the requirements of Loc.R. 43.03 and requires exclusion under Loc.R. 43.04. We must observe that instead of requesting the court to compel the defendants to provide more information, plaintiff waited until after the close of discovery and filed a motion for summary judgment based on the failure of the defendants to provide expert evidence refuting her claims of causation. It was only when that motion was denied that plaintiff sought to depose Drs. Schirmer and Mikami. As the trial court held, "assuming Defendants violated the local rule with their expert disclosure, justice required that the Court overlook

No. 18AP-264

the failure to properly disclose," as authorized under Loc.R. 43.04. (Mar. 23, 2018 Decision at 10.) Given the trial court's broad discretion to decide evidentiary issues, *see, e.g., Robertson* at ¶ 27, and the inherent power and discretion of the trial judge to control the court proceedings, *e.g., Riverside Methodist Hosp. Assn. v. Guthrie*, 3 Ohio App.3d 308, 310 (Dist.1982), even if we disagreed with the trial court's conclusion that the disclosure was insufficient, we cannot say that its choice to permit the experts to testify was erroneous. Therefore, plaintiff's second assignment of error is overruled.

## III. Assignment of Error Three: Mount Carmel's Motion for Summary Judgment

{¶ 21} Plaintiff's third assignment of error argues the trial court erred in granting defendant Mount Carmel's motion for summary judgment. The question presented in that motion is whether Mount Carmel could be held liable under principles of agency law for the negligence of Dr. Price. But because we have determined the trial court did not err in the resolution of plaintiff's first two assignments of error because the jury held that Dr. Price's negligence was not the proximate cause of Charles' death, and because the plaintiff has not argued that Mount Carmel is directly liable for Charles' death, we conclude her third assignment of error is moot.

{¶ 22} For all these reasons, plaintiff's first and second assignments of error are overruled, plaintiff's third assignment of error is rendered moot, and the trial court's judgment granting summary judgment to defendant Mount Carmel and denying the COSA defendants' combined motion for judgment notwithstanding the verdict and for new trial is affirmed.

*Judgment affirmed.*

DORRIAN J., concurs.
BRUNNER, J., concurs separately.

BRUNNER, J., concurring.

{¶ 23} I concur with the majority on all assignments of error and specifically that the trial court was not required under Civ.R. 33(A)(3) to admit for the appellant's purposes at trial the signed but unsworn interrogatories. With this separate opinion, I wish to point out that "sandbagging" or purposely underperforming is not favored in litigation. There is

No. 18AP-264

no indication in the record that purposeful sandbagging occurred here, but disfavor of the potential to do so is worth calling out.

{¶ 24} There are two salient points to be made here: first, it should be sanctionable under Civ.R. 11 for counsel to purposely provide interrogatory responses not under oath as required by Civ.R. 33(A)(3). There is no indication in the record that this occurred here even though appellees benefited from this miscarriage of compliance with the discovery rule. Most unfortunately, this was the primary basis for the trial court excluding the responses to interrogatories. Civ.R. 33(A)(3).

{¶ 25} Second, an entity such as Central Ohio Surgical Associates, Inc. ("COSA") is required under Civ.R. 33(A)(1) to "choose one or more of its *proper* employees, officers, or agents to answer the interrogatories, and * * * furnish information as is known or available to the organization." (Emphasis added.) This means that COSA could not provide answers to interrogatories by an individual of the organization who was not the proper individual to respond to the questions asked. Here, the individual who had signed the interrogatories, albeit not under oath, was not called as a witness. This problem could have been remedied by appellant having called this particular witness, but it was not.

{¶ 26} In the end, while the way COSA chose to respond to the interrogatories propounded by the appellant is disappointing and deficient, the appellant could have overcome the deficiencies by seeking compliance with and under the procedures provided for in the Rules of Civil Procedure.

{¶ 27} I raise these issues in this separate opinion because litigating the rights of parties in a dispute should not sink to this level, where winning or losing hinges on technicalities. Failing to provide sworn answers to interrogatories (with the exception of attorney-signed objections) is an unacceptable impediment to reaching the truth in litigation. And it bears noting that it is also not acceptable for an organization subject to answering interrogatories under Civ.R. 33(A)(1) to provide anyone other than the proper person with knowledge of the information used to respond to the questions raised in interrogatories.

{¶ 28} Historically, this Court recognized before the adoption of the Rules of Civil Procedure that interrogatories are "for the purpose of aiding defendants in supporting their own case rather than to destroy the plaintiff's case. Answers to interrogatories may be

No. 18AP-264

considered in certain instances as evidence but become no part of the pleadings." *Home Owners' Serv. Corp. v. Hadley*, 86 Ohio App. 340, 345 (10th Dist.1949).  And since the adoption of the Rules of Civil Procedure gave the trial court the flexibility to order that "an interrogatory be answered at a later time, or after designated discovery has been completed, or at a pretrial conference," appellant had under the rules ample opportunities to seek the assistance of the trial court in achieving full compliance with Civ.R. 33 by COSA.  Civ.R. 33(B).

{¶ 29}  Because appellant did not undertake what was necessary to make evidentiary use of COSA's interrogatories responses at trial, the trial court did not abuse its discretion in denying their use or in denying appellant's subsequent motions to find error in not permitting their use.  For these reasons, I concur with the judgment of the majority.

_____